2015 VT 91

## State of Vermont v. Douglas S. Cavett

[126 A.3d 1287]

No. 14-124

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.**

Opinion Filed July 2, 2015

*William H. Sorrell*, Attorney General, and *Paul Barkus*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Robert L. Sussman* of *Blodgett, Watts, Volk & Sussman, P.C.*, Burlington, for Defendant-Appellant.

¶ 1. **Dooley, J.** Defendant appeals the decision of the Chittenden Superior Court concluding that he violated the condition of his probation requiring him to complete the Vermont Treatment Program for Sexual Abusers (VTPSA). The court found that defendant failed to complete the required program, but it refused to review the underlying disciplinary action of the Department of Corrections (DOC) that resulted in defendant's removal from the program. We reverse the court's conclusion that it had no jurisdiction to review the DOC's decision and remand the matter for the court to conduct the appropriate review.

¶ 2. The trial court found the following facts. Defendant was charged with aggravated sexual assault and sentenced to a term of five-to-fifteen years, suspended except for four years to serve. The sentencing court imposed on defendant several probation conditions, including Condition 34, which states: "You shall participate fully in the VT Treatment program for sexual abusers during the course of your suspended sentence. Failure to complete said program while incarcerated may result in a violation of your probation."

¶ 3. On November 16, 2012, defendant attended a brief VTPSA orientation where he went over the VTPSA Treatment Agreement and received the VTPSA Orientation Handbook. Included in the program rules outlined in the handbook is the "cardinal rule" against "physical violence or threats of physical violence." As the handbook cautions, breaking this cardinal rule "may result in termination from the program." Paragraph 4 of the Treatment Agreement states: "I have read the 'VTPSA Orientation Handbook' and the facility 'Inmate Handbook' and agree to follow all the rules and regulations in these handbooks." On November 20, after asking a few clarifying questions about the program, defendant signed the agreement.

¶ 4. On April 19, 2013, defendant met with the corrections officer tasked with investigating two disciplinary reports lodged against him. During the meeting, defendant sat on the opposite side of the desk from the officer. The officer testified that defendant was upset and agitated, was speaking in a voice that was higher-pitched and louder than normal, and had become flush. She further testified that defendant crumpled the disciplinary report and threw it, hitting her in the face as she attempted to duck. She also testified that defendant's "gross motor activity had increased to the point that she was concerned for her safety."

¶ 5. Defendant disputed that he intentionally threw the paper at the corrections officer. He testified that he was not trying to hit the officer but merely was trying to throw the paper in the trash. The video recording of the incident, which was admitted into evidence in the trial court, showed that defendant lobbed the paper, but because of the grainy quality of the video, it was not possible to determine whether the paper was lobbed directly toward the corrections officer or to her right.

¶ 6. As a consequence of the April 19 incident, a Major Disciplinary Report (DR) was filed against defendant for violent and threatening behavior. Defendant pursued the appropriate administrative procedure, but the Major DR was upheld. On April 16, defendant was terminated from the program. The Notice of Termination states that defendant was terminated for the following reason:

> Assault of a corrections officer on 04-09-13 in violation of VTPSA cardinal rule: "No physical violence or threats of physical violence." As recorded on camera, when given DR paperwork by the officer you wadded up the paper, drew back and threw it at the officer, hitting her in the shoulder when she ducked to avoid the projectile.

Due to defendant's termination from the program, a probation-violation complaint was filed for violation of Condition 34.[*]

¶ 7. On November 19, 2013, a hearing was held on defendant's violation of probation. Defendant argued that: (1) he did not understand the scope of the rule against violent behavior; (2) the video clearly shows the paper-throwing incident was not violent;

---

[*] Defendant initially was cited for four probation violations, but the State dropped the other three violations and proceeded only on Condition 34.

(3) because his behavior was not assaultive, he should not have been terminated from the program; and (4) because he should not have been terminated from the program, he cannot be found in violation of his probation.

¶ 8. The court reviewed the video recording of the incident and conceded that "if the Defendant had been brought before the Court for a violation of probation based upon violent behavior, the Court might not have found a violation." Relying, however, on our holdings in *Inman v. Pallito*, 2013 VT 94, 195 Vt. 218, 87 A.3d 449, and *Rheaume v. Pallito*, 2011 VT 72, 190 Vt. 245, 30 A.3d 1263, the court concluded that it was unable to review the underlying determination by the DOC that resulted in defendant's termination from the program. The court stated:

> In order for Defendant to prevail in this forum, the Court would have to determine that the [DOC] erred and had no legitimate basis for finding Defendant 'guilty' of assaultive behavior. In other words, Defendant asks the Court to make a determination that it could not have made if the Defendant had attempted to directly appeal the Major DR.

Accordingly, the court concluded that defendant violated Condition 34 for failing to complete the VTPSA program. This appeal followed.

¶ 9. On appeal, defendant argues that the trial court erred in concluding that it lacked jurisdiction to consider the DOC's decision to terminate him from VTPSA. Specifically, defendant argues that: (1) the court is authorized by statute to make a final determination of whether there are grounds for revocation; (2) the court's delegation of decisionmaking authority to the DOC in a probation-violation matter violates the separation-of-powers doctrine; and (3) violation-of-probation hearings involve constitutional questions that the court has the power to review. Defendant further argues that the court erred in relying on *Inman* and *Rheaume* because a probation-violation hearing differs from a Rule 75 action. The State, on the other hand, urges that the DOC has exclusive authority to determine defendant's compliance with the VTPSA requirements, making such decisions absolutely unreviewable. And while the State concedes that constitutional questions are reviewable, it counters that defendant here has no colorable constitutional claim.

¶ 10. We begin by reviewing the trial court's conclusion that it lacked authority to review the DOC's programming decision — that is, that defendant's conduct violated the prohibition on violent and threatening behavior, resulting in his removal from the VTPSA. This is a question of law, which we review de novo. *State v. Sommer*, 2011 VT 59, ¶ 5, 190 Vt. 236, 27 A.3d 1059.

¶ 11. We start with an examination of *Inman* and *Rheaume* to consider their applicability to this case. The plaintiffs in both *Inman* and *Rheaume* sought review of DOC programming decisions under Vermont Rule of Civil Procedure 75, which provides, in pertinent part, that "[a]ny action or failure or refusal to act by an agency of the state or a political subdivision thereof . . . may be reviewed in accordance with this rule if such review is otherwise available by law." V.R.C.P. 75(a). The Reporter's Notes explain that Rule 75 "provides a procedure applicable whenever county court review is provided by . . . statute . . . or is available as a matter of general law by proceedings in the nature of certiorari, mandamus, or prohibition." Because these cases specifically address the availability of a remedy under Rule 75 for specific DOC programming requirements not at issue here, we do not find them controlling.

¶ 12. In *Rheaume*, the plaintiff sought review of both his designation as a high-risk sex offender and the programming requirements imposed following that designation. The plaintiff there was required to participate in both VTPSA and the Cognitive Self-Change Program for violent offenders, and successful participation would affect the length of his incarceration. We concluded that the high-risk designation is reviewable pursuant to statute, but we found no authority to review the programming requirements. 2011 VT 72, ¶¶ 10-11. Observing that no statute provides for review of DOC programming requirements, we turned to the common-law writs of prohibition, mandamus, and certiorari and found none of them applicable. *Id.* ¶¶ 6-11. Notably, we concluded that certiorari review was not available because the DOC is not "performing the functions of a quasi-judicial body when it establishes programming requirements" but "is fulfilling . . . statutorily-created responsibilities." *Id.* ¶ 10.

¶ 13. We returned to our holding in *Rheaume* two years later when we confronted an appeal of another DOC programming decision in *Inman*. There, the plaintiff was participating in the Incarceration Domestic Abuse Treatment Program in order to

obtain early release. He was terminated from the program for reasons including that he was just "going through the motions in the [treatment] program, presenting what he knew others wanted to hear rather than his own beliefs." 2013 VT 94, ¶ 17. Relying on *Rheaume*, the trial court concluded that the termination decision was unreviewable. We agreed with the court, stating that "[a]lthough [the] plaintiff attempts to characterize the termination of his participation in [the treatment program] as quasi-judicial, this is a programming decision that falls within the broad discretion that the DOC must have in order to decide the proper treatment for each inmate." 2013 VT 94, ¶ 18.

¶ 14. ■ *Inman* and *Rheaume* are jurisdictional decisions in which we held that the trial court has no jurisdiction to review the programming decisions of the DOC, even if those decisions affect the length of an inmate's incarceration. Here, although the termination of defendant's participation in VTPSA was a programming decision with consequences in the correctional system, the court was not reviewing that decision or its internal consequences. Rather, the court was deciding whether to revoke defendant's probation, an action over which the trial court has exclusive jurisdiction. See 28 V.S.A. § 302 (court shall not revoke probation without hearing in open court); *id.* § 303 (court must have necessary and sufficient ground for revocation). This is a very different decision from *Inman* and *Rheaume*, and those decisions are of limited relevance in this context.

¶ 15. ■ Instead, we conclude that this case is controlled by two earlier probation-revocation decisions: *State v. Masse*, 164 Vt. 630, 674 A.2d 1253 (1995) (mem.), and *State v. Coyle*, 2005 VT 58, 178 Vt. 580, 878 A.2d 1062 (mem.). In *Masse*, the State sought revocation of the defendant's probation, alleging that the defendant violated a condition requiring him to "actively participate in mental health and sex offender counseling to the satisfaction of [his] probation officer." 164 Vt. at 631, 674 A.2d at 1254. The complaint alleged that the defendant's therapist terminated him from a sex offender treatment group for missing group sessions, not participating in group therapy, not completing homework, and failing to make payments for treatment. The trial court defined the issue as whether the defendant had properly participated in the program — not whether he had been properly terminated or whether his probation officer abused his discretion in seeking

revocation. We agreed with the trial court, holding that the words "'to the satisfaction of the probation officer' . . . merely express what is true of all probation conditions: that the Commissioner of Corrections, acting through the probation officer, has the discretion whether to file a violation-of-probation complaint based on a probationer's alleged violation of a condition of probation" but that the role of the court is to determine whether a violation occurred, not to review the probation officer's exercise of discretion. *Id.* at 631-32, 674 A.2d at 1255. We based our decision primarily on 28 V.S.A. § 303(a), which authorizes revocation only if the probationer violates a condition of probation.

¶ 16. We reiterated the *Masse* holding in *State v. Coyle*. There, the defendant was terminated from a sex offender treatment program because he had contact with the victim of the underlying crime in violation of a specific no-contact guideline. Despite the presence of a probation condition mandating that the defendant "shall attend and satisfactorily participate in sexual behavior counseling and will not be discharged without satisfactory completion all as determined by [his] counselor and probation officer," 2005 VT 58, ¶ 3, we held that the court must find a violation of the no-contact guideline in order to uphold the probation violation. *Id.* ¶ 8.

¶ 17. The applicable condition here is functionally equivalent to those in *Masse* and *Coyle*. It states that defendant's failure to complete VTPSA *"may* result in a violation of [his] probation." This language gives the court discretion to find a violation based on a recommendation of the probation officer. As in *Masse*, however, before exercising that discretion, the court must find a substantive ground for revocation, as required by 28 V.S.A. § 303(a).

¶ 18. ■ We also note that even if the court finds a violation of a condition of probation, the court has discretion in determining whether to revoke probation, see 28 V.S.A. § 304(a) (providing that on finding violation, "court may, in its discretion, revoke probation"), and, in any event, must find an additional ground for revocation under § 303(b) if confinement will result. Thus, while a violation is "a necessary and sufficient ground for revocation of probation," it does not automatically result in revocation.

¶ 19. ■ Here, the alleged substantive ground is a violation of VTPSA's cardinal rule against physical violence or threats of

physical violence. The court failed to determine whether the requirement was violated. Nor did it exercise its discretion to determine whether the alleged violation was such that revocation should be ordered. Because we reverse on these bases, we do not reach defendant's other arguments.

*Reversed and remanded.*