2015 VT 91








State v. Cavett (2014-124)

 

2015 VT 91

 

[Filed 02-July-2015]

 

NOTICE:  This opinion is subject
to motions for reargument under V.R.A.P. 40 as well as formal revision before
publication in the Vermont Reports.  Readers are requested to notify the
Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont
Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors
in order that corrections may be made before this opinion goes to press.

 

 


 
 
 2015 VT 91
 
 


 


 
 
 No. 2014-124
 
 


 


 
 
 State of Vermont 
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Chittenden Unit,
 
 
 
 
  
 
 
 Criminal Division
 
 
 
 
  
 
 
  
 
 
 
 
 Douglas S. Cavett
 
 
 January Term, 2015
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Michael
 S. Kupersmith, J.
 
 
 
 
  
 
 


William H. Sorrell, Attorney General, and Paul Barkus,
Assistant Attorney General, 

  Montpelier, for Plaintiff-Appellee.

 

Robert L. Sussman of Blodgett, Watts, Volk & Sussman,
P.C., Burlington, for 

  Defendant-Appellant.

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and
Eaton, JJ.

 

 

¶
1.            
DOOLEY, J.   Defendant appeals the decision of the Chittenden
Superior Court concluding that he violated the condition of his probation
requiring him to complete the Vermont Treatment Program for Sexual Abusers
(VTPSA).  The court found that defendant failed to complete the required
program, but it refused to review the underlying disciplinary action of the
Department of Corrections (DOC) that resulted in defendant’s removal from the
program.  We reverse the court’s conclusion that it had no jurisdiction to
review the DOC’s decision and remand the matter for the court to conduct the
appropriate review.

¶
2.            
The trial court found the
following facts.  Defendant was charged with aggravated sexual assault and
sentenced to a term of five-to-fifteen years, suspended except for four years
to serve.  The sentencing court imposed on defendant several probation
conditions, including Condition 34, which states: “You shall participate fully
in the VT Treatment program for sexual abusers during the course of your
suspended sentence.  Failure to complete said program while incarcerated may
result in a violation of your probation.”

¶
3.            
On November 16, 2012, defendant
attended a brief VTPSA orientation where he went over the VTPSA Treatment
Agreement and received the VTPSA Orientation Handbook.  Included in the program
rules outlined in the handbook is the “cardinal rule” against “physical
violence or threats of physical violence.”  As the handbook cautions, breaking
this cardinal rule “may result in termination from the program.”  Paragraph 4
of the Treatment Agreement states: “I have read the ‘VTPSA Orientation
Handbook’ and the facility ‘Inmate Handbook’ and agree to follow all the rules
and regulations in these handbooks.”  On November 20, after asking a few
clarifying questions about the program, defendant signed the agreement.

¶
4.            
On April 19, 2013, defendant met
with the corrections officer tasked with investigating two disciplinary reports
lodged against him.  During the meeting, defendant sat on the opposite side of
the desk from the officer.  The officer testified that defendant was upset and
agitated, was speaking in a voice that was higher-pitched and louder than
normal, and had become flush.  She further testified that defendant crumpled
the disciplinary report and threw it, hitting her in the face as she attempted
to duck.  She also testified that defendant’s “gross motor activity had
increased to the point that she was concerned for her safety.”

¶
5.            
Defendant disputed that he
intentionally threw the paper at the corrections officer.  He testified that he
was not trying to hit the officer but merely was trying to throw the paper in
the trash.  The video recording of the incident, which was admitted into
evidence in the trial court, showed that defendant lobbed the paper, but
because of the grainy quality of the video, it was not possible to determine
whether the paper was lobbed directly toward the corrections officer or to her
right.

¶
6.            
As a consequence of the April 19
incident, a Major Disciplinary Report (DR) was filed against defendant for
violent and threatening behavior.  Defendant pursued the appropriate
administrative procedure, but the Major DR was upheld.  On April 16, defendant
was terminated from the program.  The Notice of Termination states that
defendant was terminated for the following reason:

  Assault of a corrections officer on
04-09-13 in violation of VTPSA cardinal rule: “No physical violence or threats
of physical violence.”  As recorded on camera, when given DR paperwork by the
officer you wadded up the paper, drew back and threw it at the officer, hitting
her in the shoulder when she ducked to avoid the projectile.

Due
to defendant’s termination from the program, a probation-violation complaint
was filed for violation of Condition 34.*

¶
7.            
On November 19, 2013, a hearing
was held on defendant’s violation of probation.  Defendant argued that: (1) he
did not understand the scope of the rule against violent behavior; (2) the
video clearly shows the paper-throwing incident was not violent; (3) because
his behavior was not assaultive, he should not have been terminated from the
program; and (4) because he should not have been terminated from the program,
he cannot be found in violation of his probation.

¶
8.            
The court reviewed the video
recording of the incident and conceded that “if the Defendant had been brought
before the Court for a violation of probation based upon violent behavior, the
Court might not have found a violation.”  Relying, however, on our holdings in Inman
v. Pallito, 2013 VT 94, 195 Vt. 218, 87 A.3d 449, and Rheaume v. Pallito,
2011 VT 72, 190 Vt. 245, 30 A.3d 1263, the court concluded that it was unable
to review the underlying determination by the DOC that resulted in defendant’s
termination from the program.  The court stated:

  In order for Defendant to prevail in
this forum, the Court would have to determine that the [DOC] erred and had no
legitimate basis for finding Defendant ‘guilty’ of assaultive behavior.  In
other words, Defendant asks the Court to make a determination that it could not
have made if the Defendant had attempted to directly appeal the Major DR.

Accordingly,
the court concluded that defendant violated Condition 34 for failing to
complete the VTPSA program.  This appeal followed.

¶
9.            
On appeal, defendant argues that
the trial court erred in concluding that it lacked jurisdiction to consider the
DOC’s decision to terminate him from VTPSA.  Specifically, defendant argues
that: (1) the court is authorized by statute to make a final determination of
whether there are grounds for revocation; (2) the court’s delegation of
decisionmaking authority to the DOC in a probation-violation matter violates
the separation-of-powers doctrine; and (3) violation-of-probation hearings
involve constitutional questions that the court has the power to review. 
Defendant further argues that the court erred in relying on Inman and Rheaume
because a probation-violation hearing differs from a Rule 75 action.  The
State, on the other hand, urges that the DOC has exclusive authority to
determine defendant’s compliance with the VTPSA requirements, making such
decisions absolutely unreviewable.  And while the State concedes that
constitutional questions are reviewable, it counters that defendant here has no
colorable constitutional claim.

¶
10.        
We begin by reviewing the trial
court’s conclusion that it lacked authority to review the DOC’s programming
decision—that is, that defendant’s conduct violated the prohibition on violent
and threatening behavior, resulting in his removal from the VTPSA.  This is a
question of law, which we review de novo.  State v. Sommer, 2011 VT 59,
¶ 5, 190 Vt. 236, 27 A.3d 1059.  

¶
11.        
We start with an examination of Inman
and Rheaume to consider their applicability to this case.  The plaintiffs
in both Inman and Rheaume sought review of DOC programming
decisions under Vermont Rule of Civil Procedure 75, which provides, in
pertinent part, that “[a]ny action or failure or refusal to act by an agency of
the state or a political subdivision thereof . . . may be
reviewed in accordance with this rule if such review is otherwise available by
law.”  V.R.C.P. 75(a).  The Reporter’s Notes explain that Rule 75 “provides a
procedure applicable whenever county court review is provided
by . . . statute . . . or is available
as a matter of general law by proceedings in the nature of certiorari,
mandamus, or prohibition.”  Because these cases specifically address the availability
of a remedy under Rule 75 for specific DOC programming requirements not at
issue here, we do not find them controlling.

¶
12.        
In Rheaume, the plaintiff
sought review of both his designation as a high-risk sex offender and the
programming requirements imposed following that designation.  The plaintiff
there was required to participate in both VTPSA and the Cognitive Self-Change
Program for violent offenders, and successful participation would affect the
length of his incarceration.  We concluded that the high-risk designation is
reviewable pursuant to statute, but we found no authority to review the
programming requirements.  2011 VT 72, ¶¶ 10-11.  Observing that no
statute provides for review of DOC programming requirements, we turned to the
common-law writs of prohibition, mandamus, and certiorari and found none of
them applicable.  Id. ¶¶ 6-11.  Notably, we concluded that
certiorari review was not available because the DOC is not “performing the
functions of a quasi-judicial body when it establishes programming
requirements” but “is fulfilling . . . statutorily-created
responsibilities.”  Id. ¶ 10.

¶
13.        
We returned to our holding in Rheaume
two years later when we confronted an appeal of another DOC programming
decision in Inman.  There, the plaintiff was participating in the
Incarceration Domestic Abuse Treatment Program in order to obtain early
release.  He was terminated from the program for reasons including that he was
just “going through the motions in the [treatment] program, presenting what he
knew others wanted to hear rather than his own beliefs.”  2013 VT 94,
¶ 17.  Relying on Rheaume, the trial court concluded that the
termination decision was unreviewable.  We agreed with the court, stating that
“[a]lthough [the] plaintiff attempts to characterize the termination of his
participation in [the treatment program] as quasi-judicial, this is a
programming decision that falls within the broad discretion that the DOC must
have in order to decide the proper treatment for each inmate.”  2013 VT 94,
¶ 18.

¶
14.        
Inman and Rheaume are jurisdictional decisions in
which we held that the trial court has no jurisdiction to review the
programming decisions of the DOC, even if those decisions affect the length of
an inmate’s incarceration.  Here, although the termination of defendant’s
participation in VTPSA was a programming decision with consequences in the
correctional system, the court was not reviewing that decision or its internal
consequences.  Rather, the court was deciding whether to revoke defendant’s
probation, an action over which the trial court has exclusive jurisdiction. 
See 28 V.S.A. § 302 (court shall not revoke probation without hearing in
open court); id. § 303 (court must have necessary and sufficient
ground for revocation).  This is a very different decision from Inman
and Rheaume, and those decisions are of limited relevance in this
context.

¶
15.        
Instead, we conclude that this
case is controlled by two earlier probation-revocation decisions: State v.
Masse, 164 Vt. 630, 674 A.2d 1253 (1995) (mem.), and State v. Coyle,
2005 VT 58, 178 Vt. 580, 878 A.2d 1062 (mem.).  In Masse, the State
sought revocation of the defendant’s probation, alleging that the defendant violated
a condition requiring him to “actively participate in mental health and sex
offender counseling to the satisfaction of [his] probation officer.”  164 Vt.
at 631, 674 A.2d at 1254.  The complaint alleged that the defendant’s therapist
terminated him from a sex offender treatment group for missing group sessions,
not participating in group therapy, not completing homework, and failing to
make payments for treatment.  The trial court defined the issue as whether the defendant
had properly participated in the program—not whether he had been properly
terminated or whether his probation officer abused his discretion in seeking
revocation.  We agreed with the trial court, holding that the words “ ‘to
the satisfaction of the probation officer’ . . . merely
express what is true of all probation conditions: that the Commissioner of
Corrections, acting through the probation officer, has the discretion whether
to file a violation-of-probation complaint based on a probationer’s alleged
violation of a condition of probation” but that the role of the court is to
determine whether a violation occurred, not to review the probation officer’s
exercise of discretion.  Id. at 631-32, 674 A.2d at 1255.  We based our
decision primarily on 28 V.S.A. § 303(a), which authorizes revocation only
if the probationer violates a condition of probation.

¶
16.        
We reiterated the Masse
holding in State v. Coyle.  There, the defendant was terminated from a
sex offender treatment program because he had contact with the victim of the
underlying crime in violation of a specific no-contact guideline.  Despite the
presence of a probation condition mandating that the defendant “shall attend
and satisfactorily participate in sexual behavior counseling and will not be
discharged without satisfactory completion all as determined by [his] counselor
and probation officer,” 2005 VT 58, ¶ 3, we held that the court must find
a violation of the no-contact guideline in order to uphold the probation
violation.  Id. ¶ 8.

¶
17.        
The applicable condition here is
functionally equivalent to those in Masse and Coyle.  It states
that defendant’s failure to complete VTPSA “may result in a violation of
[his] probation.”  This language gives the court discretion to find a violation
based on a recommendation of the probation officer.  As in Masse,
however, before exercising that discretion, the court must find a substantive
ground for revocation, as required by 28 V.S.A. § 303(a).  

¶
18.        
We also note that even if the
court finds a violation of a condition of probation, the court has discretion
in determining whether to revoke probation, see 28 V.S.A. § 304(a) (providing
that on finding violation, “court may, in its discretion, revoke probation”),
and, in any event, must find an additional ground for revocation under § 303(b)
if confinement will result.  Thus, while a violation is “a necessary and
sufficient ground for revocation of probation,” it does not automatically
result in revocation. 

¶
19.        
Here, the alleged substantive
ground is a violation of VTPSA’s cardinal rule against physical violence or
threats of physical violence.  The court failed to determine whether the
requirement was violated.  Nor did it exercise its discretion to determine
whether the alleged violation was such that revocation should be ordered.  Because
we reverse on these bases, we do not reach defendant’s other arguments.

Reversed and remanded.

 


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 









* 
Defendant initially was cited for four probation violations, but the State
dropped the other three violations and proceeded only on Condition 34.