NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 27

No. 2016-397

| | |
|---|---|
| Mongeon Bay Properties, LLC | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Mallets Bay Homeowner's Association, Inc. and | April Term, 2017 |
| Anthony J. Sineni III | |

Dennis R. Pearson, J.

David H. Greenberg, Burlington, for Plaintiff-Appellee.

David D. Aman of Heilmann, Ekman, Cooley & Gagnon, Inc., Burlington, for
 Defendant- Appellant.


PRESENT: Reiber, C.J., Skoglund, Robinson and Eaton, JJ., and Dooley, J. (Ret.),
          Specially Assigned


¶ 1.    **ROBINSON, J.**   Mallets Bay Homeowner's Association appeals the trial court's partial denial of its motion to stay the issuance of a writ of possession in favor of Mongeon Bay Properties (MBP) following the termination of the Association's ground lease. We reverse the trial court's order in part, and remand for the trial court to exercise its discretion.

¶ 2.    The events leading to the termination of the ground lease between the parties are recounted in greater detail in this Court's recent decision in Mongeon Bay Properties, LLC v. Mallets Bay Homeowner's Association (Mongeon Bay I), 2016 VT 64, __ Vt. __, 149 A.3d 940. The Mongeon family owned property in Colchester on the shore of Lake Champlain. There are

over twenty-five camps on the property, ten of which are built on an embankment right next to the lake. Over time, the camp structures built on the property became seasonal residences owned by camp occupants, although the Mongeon family continued to own the underlying land. In 1995, members of the Mongeon family set up a partnership to own the land under the camps, and the partnership entered into a ground lease with the Association, a non-profit corporation, rather than the individual owners of each residence. As amended by the parties, MBP and the Association, the ground lease was due to expire in 2036. The lease contained a forfeiture clause, providing that the lease would terminate "if the [Association] shall fail to perform or comply with any terms of this Lease," and "such failure shall continue for more than 45 days after the [Association] receives notice or knowledge of such failure."

¶ 3. MBP sued the Association in January 2012, seeking damages and termination of the ground lease because the Association had failed to perform reasonable repairs and upkeep as required by the lease. In particular, MBP showed that severe damage to the property along the banks of the lake could have been prevented if the Association had undertaken reasonable steps to protect against erosion. The trial court concluded that the Association's failure to properly maintain the property and the resulting damage amounted to "waste," and therefore the Association had violated the lease. However, the trial court determined that terminating the lease under the default provision was inequitable and instead awarded MBP damages to cover the cost of repairing the property.

¶ 4. On appeal, this Court affirmed the trial court's determination that the Association had breached the lease, but remanded for reconsideration of MBP's remedy. We concluded that the trial court did not have the authority to decline to enforce the contract's default provision where it concluded that the Association had substantially defaulted pursuant to the terms of the ground lease, and MBP had timely invoked its right to terminate. Mongeon Bay I, 2016 VT 64, ¶ 64-69. We stated that MBP was entitled to terminate the ground lease as a matter of law, and was entitled

2

to a writ of possession. Id. We remanded to the trial court for determination of a remedy in light of our decision. We issued this decision on June 10, 2016, and denied a motion for reargument on July 11, 2016.

¶ 5. On remand, the parties spent several months litigating issues relating to post-judgment trustee process, attorneys' fees, and other collateral matters.

¶ 6. On September 20, 2016, the Association requested that the trial court stay the issuance of a writ of possession pursuant to 12 V.S.A. § 4854, which states in relevant part: "A writ of possession shall issue on the date judgment is entered, unless the court for good cause orders a stay." The Association argued that there was good cause for the court to stay the writ until 2036, when the lease was set to expire. The Association argued that it should be entitled to receive the benefit of the substantial improvements to the property, and in particular the repairs to the embankments ordered by the trial court. The Association emphasized the hardship the writ of possession would cause individual homeowners, and argued that staying the judgment until 2036 was reasonable because it would give the homeowners enough time to relocate their homes from the property, avoid the hardship of removing children from their schools, and enable homeowners to make arrangements with their lenders and terminate leases with subtenants. The Association also argued that the lease was silent as to how much time the Association had to remove their residences from the property upon termination of the lease. For all these reasons, the Association argued that there was good cause to stay the writ of possession until the 2036 lease expiration. Alternatively, the Association asked for a ten-year stay "[a]t the very least," given what is at stake financially. Finally, the Association requested, "[a]t a bare minimum, [MBP] should be estopped from taking possession of the property until April 30, 2017," because the Association had paid rent through that day.

¶ 7. On October 31, the trial court issued an amended final judgment in response to this Court's decision. It ordered that judgment was entered in favor of MBP, that the ground lease was

3

terminated, and that MBP was to be granted a writ of possession for the property. That same day, the trial court also issued an order in response to the Association's motion to stay. The court stated:

> The opinion and mandate of the Vermont Supreme Court make it very clear that this court has no ability to exercise any equitable discretion . . . to deny [MBP] the requested writ of possession, and not to consider the lease terminated pursuant to its express terms . . . . This court must assume that the Vermont Supreme Court understood, and considered most, if not all of the adverse consequences of its holding on the individual camp owners. This court has no authority given the mandate in this case to exercise any further discretion on those grounds, as compelling as some of the points made might otherwise be.

Nonetheless, the court determined that Vermont Rule of Civil Procedure 62(a)(3)(B) authorized it to stay the writ for up to twenty days or until the time to appeal to this Court had expired, which is thirty days under Vermont Rule of Appellate Procedure 4(a)(1). Accordingly, the court stayed enforcement of the writ for thirty days, subject to any further stays that could be granted pursuant to the Vermont Rules of Civil Procedure once the Association appealed the decision. The Association appealed.

¶ 8. While the appeal was pending, the Association filed another motion requesting that the court stay execution of the writ either until April 30, 2017 or until this Court issued a decision on its appeal. The Association filed this motion pursuant to Rule 62(d)(3), which affords the trial court discretion to stay issuance or execution of an order for possession during the pendency of an appeal "upon such terms as it considers necessary to protect the interests of any party." In its motion, the Association noted that it had prepaid rent through April 30, 2017. By order dated November 21, the trial court granted the motion and stayed execution of the writ of possession until May 1, 2017.

¶ 9. On appeal from the trial court's October 31 order partially denying its request for a stay, the Association repeats the arguments it made below. In particular, it argues that: (1) the Association should be entitled to receive the benefit of the substantial improvements it has

4

provided or is providing to MBP by constructing seawalls, drains and erosion control, and a septic system; (2) terminating the Association's possession prior to 2036 would result in an unjust windfall; (3) the ground lease leaves open the timeframe in which the Association, or its members, must remove their residences upon termination of the lease; (4) homeowners need time to find a new lots, obtain necessary permits, and move their homes; and (5) many individual homeowners will suffer substantial hardship if forced to vacate by May 1. The Association continues to argue for a stay of the issuance of a writ of possession until 2036, "or, at the very least, until a date significantly beyond April 30, 2017."

¶ 10. We agree with the trial court's conclusion that it did not have the discretion to stay the writ of possession in this case until 2036, or even for the alternate ten-year interval sought by the Association. The Association essentially seeks to use the mechanism of a statutorily authorized stay of execution pursuant to 12 V.S.A. § 4854 to make an end-run around its contractual obligations as adjudicated by this Court. In Mongeon Bay I, we held that the trial court lacked the authority to invoke the general equitable considerations relied upon by the Association in this appeal to allow the Association to possess the property through the duration of the ground lease in the face of a contracted-for forfeiture provision in the lease. 2016 VT 64, ¶¶ 63-69. Although the trial court has the authority to stay execution of the judgment of possession pursuant to 12 V.S.A. § 4854, the court's discretion does not extend to essentially undoing the parties' contract and the consequences of the Association's forfeiture under that agreement.

¶ 11. In addition, we do not agree that the ground lease is silent as to the amount of time afforded the Association, or the homeowners who act through the Association, to remove their homes upon termination of the lease. At the end of the lease term, the Association is to "quit and surrender" the property to MBP "without any building or structures thereon." The lease clearly requires that structures be removed by the time the lease ends, not at some unspecified time thereafter. Likewise, in the event of repossession pursuant to a default, the lease provides that

5

MBP may repossess the land or any part thereof "pursuant to Vermont law"—meaning, in this case, upon issuance of a writ of possession. The notion that the contract contemplates some unspecified post-termination time for the Association, and the homeowners who act through the Association, to vacate is unsupported by the text of the contract, and makes no sense given the concerns relating to insurance, property taxes, and other matters that such a post-termination period-to-vacate would trigger.

¶ 12. However, to the extent that the trial court's order can be read to suggest that the court believed it had no discretion to stay execution of its judgment for possession for shorter periods—weeks or months, not years or decades—in recognition of the impracticalities of moving a home to a new lot on thirty days' notice or to otherwise facilitate an orderly transition, the court underestimated its authority. MBP is entitled to terminate the ground lease and repossess the property on account of the Association's adjudicated default. The court is not empowered to deny a writ of possession on account of the inequitable consequences of its judgment of possession. If a writ of possession is required to effectuate this order, the writ must ordinarily issue on the day of the court's judgment for possession. But this timing requirement is subject to the court's statutory authority to order a stay "for good cause." 12 V.S.A. § 4854. This statutory grant of authority is not ineffectual. See State v. Tierney, 138 Vt. 163, 165, 412 A.2d 298, 299 (1980) ("In construing a statute, this Court considers it as a whole, and, if possible, gives effect to every word, clause and sentence."). The trial court had the discretion to consider the Association's more modest and defensible requests for a shorter term stay of execution to facilitate the homeowners' transition.

¶ 13. For several reasons, it is not at all clear that the Association was prejudiced by the trial court's failure to exercise its discretion in connection with the motion for stay.

¶ 14. First, after the Association appealed, and pursuant to the Vermont Rules of Civil Procedure rather than its statutory authority, the trial court subsequently did engage in a

6

discretionary evaluation of a more modest request for stay and did stay execution of its judgment until May 1, 2017. A stay of this duration was the alternative relief the Association requested in the event that the court denied its request for either a ten-year stay or a stay until 2036.

¶ 15. Second, in its motion below, the Association relied on generalized descriptions of hardship to the homeowners and did not offer specific reasonable time frames for an orderly transition. Instead, it essentially requested a stay for as long as possible. Without more specific information and evidence about, for example, how long it takes to contract for the removal of a house, seasonal constraints on moving houses, if any, and the status of various homeowners' negotiations with their lenders as well as a realistic estimate of the time required to conclude those negotiations, the trial court had very little basis for issuing a more time-limited stay to allow for an orderly transition on the basis of the Association's filings.

¶ 16. And third, although the trial court's final judgment awarding possession to MBP did not issue until October 31, 2016, the Association was on notice that MBP was entitled to a judgment and writ of possession as of the date of our June 10, 2016 decision, or at the latest, our July 11, 2016 denial of its motion for reargument. Although the parties spent several months litigating about other matters, including the request for a stay, MBP's right to retake possession of the property was established by July 11, 2016. The stay in effect at this time will expire nine and a half months after that date—arguably ample time for the homeowners to sell their homes to MBP or remove them from the premises.

¶ 17. But we cannot make assumptions about how the trial court would have exercised its discretion if it had concluded that it had such discretion. Where the trial court declines to exercise its discretion in the mistaken belief that it has no discretion, the proper remedy is a remand. See, e.g., State v. Cavett, 2015 VT 91, ¶ 19, 199 Vt. 546, 126 A.3d 1287. Accordingly, we remand for the trial court to exercise discretion in connection with the Association's request for a stay pursuant to 12 V.S.A. § 4854.

¶ 18. Given the time-sensitivity of this appeal and our desire to avoid the possibility of future appeals that would further protract this process, we offer three observations about the trial court's exercise of its discretion. First, in light of the considerations noted above, it is difficult for this Court to imagine that a stay applying to any portion of the property extending more than an additional six months, if any extension of the stay is due at all, would be within the trial court's discretion. Second, if the trial court were to extend the stay beyond May 1, such extension would be supported only if accompanied by a bonding requirement or other sufficient advance security that would secure reasonable rental payments through the duration of the stay, the payment of property taxes, a requirement that the Association maintain insurance on the property, covering any losses associated with waste during the period of the stay, and any other liabilities MBP would bear as a result of the stay that the trial court identifies. Any such security must be provided before any extension of the stay beyond May 1. Third, if either party appeals the trial court's exercise of discretion within the above parameters, we find it difficult to imagine circumstances in which we would sustain an ongoing stay of execution of the judgment pending our review on appeal.

¶ 19. On remand, the question about which the trial court should exercise its discretion is whether to grant a longer stay than reflected in the October 31 order. The trial court may exercise that discretion on the basis of the parties' pleadings. It need not hold any further hearings unless it chooses to. In the meantime, pursuant to the court's order of November 21, 2016, the stay will expire and a writ of possession may issue on May 1 without further order of the court, unless the court elects to extend the stay. Further, in the event a bond satisfying the conditions outlined herein and as additionally required by the trial court is not provided by May 1, 2017, the Court shall issue a writ of possession without further hearing.

The trial court's October 31 order relating to the Association's motion for stay is reversed in part, and the matter remanded for the trial court to exercise its discretion as set forth above.

8

FOR THE COURT:

_____
Associate Justice

¶ 20.   **SKOGLUND, J., dissenting.**   In this matter, the trial court exercised its discretion and issued a stay of execution of its judgment of possession.  Not once, not twice, but three times.  However, it did so without acknowledging its authority to do so under 12 V.S.A. § 4854.  Perhaps it did not consider that section.  I cannot know.  I do know it allowed the Mallets Bay Homeowner's Association (the Association) to remain on the land of Mongeon Bay Properties (MBP) until its prepaid rent ran out.  Now, the majority elevates form over substance and remands again for the trial court to do what I believe it already did—exercise its discretion—this time under the statute, not under Vermont Rule of Civil Procedure 62.  I dissent from this folly.

¶ 21.   On June 23, 2015, the trial court issued a decision finding that the Association breached its lease with MBP by failing to properly maintain the property.  From this decision we learn that the damage and injury to MBP was "more likely worse than it would have been but for the years of neglect and lack of appropriate bank stabilization and protection by lakefront camp owners and the [the Association] itself."  In September 2011, MBP sent the Association a notice of default under the ground lease, outlining the claimed failure to maintain the property, "creating hazard of collapse and bodily injury" and causing a "diminution in value of the property arising from the failure of maintenance, repair and debris."  The Association was put on notice to cure all the alleged defects within forty-five days, as provided by the ground lease.

¶ 22.   Continuing with the trial court's findings, we learn the Association denied responsibility.  At the same time, the Town of Colchester (the Town) began an action against one homeowner on MBP's property because—according to the Town's notice of violation—the structure was allegedly " 'unsafe and constitutes a potential hazard.' "  No action was taken by the

9

Association within forty-five days of the notice of default or by the homeowner within thirty days of the Town's notice of violation. MBP then commenced this action against the Association in January 2012, asking the court to declare the ground lease void and forfeited because of the alleged violations. MBP also sought a preliminary injunction to compel the Association to take immediate corrective action, and/or grant it the immediate right of reentry and possession of the entire leased premises to make necessary repairs itself. The trial court found that in February 2012, the Association finally recognized it had a duty to undertake collective action to address the bank erosion and ground stability issues.

¶ 23. In April 2012, the Town issued a second Notice of Violation directed specifically at the Association. The court found that a June 2012 attempt by the Association to fix the washout at one camp was "inadequate and failed to address or correct the issues noted by the Town in its violation notices." Again, from the trial court's decision—the Association eventually hired an engineer to develop an actual plan to stabilize the embankment. When work commenced in 2013, it was discovered that dumping of unclean fill and/or trash had occurred over the bank. By the summer of 2014, it was apparent that the attempted fix was still inadequate.

¶ 24. Finally the court found that

> [The Association] would probably not have taken collective action among its entire membership to address the erosion problems . . . and more generally the bank stabilization and ground loss issues at the lakeshore camps where there is failing seawall protection, but for the confluence of the notices of violation from the Town, and this lawsuit brought by . . . MBP. Those on-going erosion problems along the affected embankment were, and are preventable by reasonably and ordinarily required repairs and upkeep which the [Association], and not individual camp owners, was obligated to perform under the Ground Lease terms.

¶ 25. The court sardonically rejected the Association's claim that MBP failed to alert the Association that it was the latter's obligation under the lease to protect the lake embankment from unnatural and preventable soil loss so [the Association] was not responsible: "The court is . . . not

10

aware of any legal precept that requires the lessor to constantly remind the lessee of its own obligations under the lease." It further held that "MBP gave [the Association] more than sufficient time to address the deficiencies." However, the court then found that voiding the ground lease entirely would be inequitable and a sanction out of proportion to the lease violations involving the failures of Association.

¶ 26. We affirmed the trial court's determination that the Association breached the lease, but reversed its refusal to declare termination of the lease and to issue a writ of possession to MBP. "[W]e have never suggested that in the context of a long-term ground lease negotiated by sophisticated parties, one party may be relieved of the contracted-for consequences of its breach on equitable grounds." Mongeon Bay Props., LLC v. Mallets Bay Homeowner's Ass'n (Mongeon Bay I), 2016 VT 64, ¶ 64, __ Vt. __, 149 A.3d 940.

¶ 27. In our decision of June 10, 2016, we held that "the Association had substantially defaulted pursuant to the terms of the ground lease, and given that MBP timely and clearly asserted its election under the terms of the contract to terminate the lease, on this record MBP was entitled to terminate the ground lease as a matter of law, and is entitled to a writ of possession." Id. ¶ 69. The Association's motion for reargument was denied on July 11, 2016.

¶ 28. On September 13, 2016, the Association moved in the trial court to stay issuance of a writ of possession, arguing that the home owners needed time to relocate and that "the 10 day statutory minimum cannot possibly contemplate the tenancy here," apparently a reference to 12 V.S.A. § 4854 ("The writ shall direct the sheriff . . . to serve the writ upon the defendant and, no sooner than ten days after the writ is served, to put the plaintiff into possession."). MBP opposed this motion, arguing that the problems facing the homeowners were brought about by the Association's own inaction and deliberate breach of the ground lease and noting that "[i]t has now had since June of 2016 to make plans to vacate the property but to date has done nothing except file motions." Seven days later, the Association filed another motion for a stay, this time directly

11

referencing 12 V.S.A. § 4854 (stating that court may stay issuance of writ of possession for "good cause" shown), and asked the court to stay issuance of the writ of possession until the termination of the ground lease in 2036, "in light of the significant complexities involved." It went on to suggest "[a]t a bare minimum, [MBP] should be estopped from taking possession of the property until April 30, 2017 as [the Association] has paid (and [MBP] accepted without objection) the rent from the May 1, 2016-April 30, 2017 lease year."

¶ 29. On October 31, 2016, the court held that, because the Association had "prepaid the lot rent in full through April 30, 2017, it is only fair and equitable that the Writ be stayed through that date." It issued the writ of possession on the same day. The Association filed another motion to stay on November 9, 2016, this time relying on Vermont Rule of Civil Procedure 62(d)(3) (stating court may stay execution of writ of possession during pendency of appeal), and asking the court to stay the enforcement and execution of the writ to either the pendency of the appeal or April 30, 2017, whichever occurred later. The court denied the request to stay the execution of the writ of possession until the appeal was resolved and restated its earlier decision to stay the writ until May 1, 2017. MBP filed a request for reconsideration. The court, on November 29, 2016, concluded that there were "no issues raised which have not already/previously been considered by the court in exercising its discretion to stay enforcement of the Writ of Possession herein through the current lease term for which rent has been wholly prepaid and accepted by the [MBP]."

¶ 30. Now, on appeal, the Association claims error in the court's October 31, 2016 decision granting a stay until April 30, 2017, interpreting the court as holding that it had no discretion to stay any writ of possession. The Association relies on the court's reference to this Court's holding that the trial court had no ability to exercise any equitable discretion to deny MBP the requested writ of possession or to determine that the lease had not been terminated pursuant to its express terms. The court then wrote, "The request that this court stay any writ of possession

until the expiration of the bargained-for lease term [in 2036] would be nothing more than a back-door effort to achieve the same result rejected by the Court."

¶ 31.  But in that same decision the court treated the motion for a stay as within its authority to delay or stay the effectiveness of a writ of possession commensurate with the time to take an appeal and chose to exercise its discretion to stay enforcement for a period of up to thirty days from the date of the final judgment.  It again exercised its discretion when it amended its decision in November by extending the stay until May 1, 2017, because rent had been paid up to that time.  Finally, upon reconsideration, it continued its decision to stay enforcement until May 1, 2017, but denied a stay for the duration of the appeal process.

¶ 32.  Although the majority agrees with the trial court's conclusion that it did not have the discretion to stay the writ of possession in this case until 2036, or even for the alternative ten-year interval sought by the Association, it then goes on to adopt the Association's interpretation of the court's declination of such a stay and faults the court for failing to recognize its authority to exercise its discretion to order a stay "for good cause" to facilitate the homeowners' transition. Ante, ¶ 12.  And, while it notes that "it is not at all clear at this point that the Association was prejudiced by the trial court's failure to exercise its discretion in connection with the motion for stay," it remands for the court to exercise its discretion.  Id. ¶ 13.

¶ 33.  I am at a loss to understand what the majority wants from the trial court.  I count three times when the court exercised its discretion to grant the requested stay.  To add insult to injury, the majority then directs the trial court on how to exercise its discretion.  The majority suggests that it would be "difficult for this Court to imagine" a stay extending more than an additional six months and, if the stay extended beyond May 1, a bonding requirement or other sufficient advance security is necessary.  Id. ¶ 18.  Finally it announces this Court's probable denial of any ongoing stay of execution of the judgment should either party appeal.  These disingenuous instructions setting the parameters for the court's exercise of its discretion are unsupportable.

¶ 34.    I dissent.

_____
Associate Justice