NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 81

No. 2017-393

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Criminal Division |
| | |
| Amanda L. Stuart | June Term, 2018 |

Martin A. Maley, J.

James A. Hughes, Franklin County State's Attorney, St. Albans, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Seibert, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.    **ROBINSON, J.**    Defendant Amanda Stuart appeals her probation revocation arising from two probation violations. She argues, among other things, that the State presented insufficient admissible evidence to support the violations upon which the revocation was based. We agree and reverse the trial court's revocation of her probation.[1]

¶ 2.    In May 2016, defendant pled guilty to negligent operation of a vehicle and reckless endangerment. The plea agreement called for concurrent one-to-twelve-month sentences, suspended with probation, to run consecutively to a sentence defendant was already serving for a

---

[1] Because defendant was serving the underlying sentence as a result of the revocation, we issued an entry order reversing the violations immediately following oral argument on June 27, 2018. This opinion lays out the reasoning underlying our decision.

past infraction. This left defendant on a "dual status"—on furlough in connection with a previous sentence and on probation for her new charges. Defendant's probation conditions in connection with the May 2016 conviction included conditions requiring that she not buy, have, or use any regulated drugs unless prescribed by a doctor, complete the CRASH program, complete substance abuse counseling, and actively participate in and complete the reparative probation program. Contrary to the parties' expectations at the time of the plea, defendant was not released after her May 2016 plea, but, rather, remained incarcerated until November 2016 because she could not meet a condition of her previous sentence that she secure housing.

¶ 3. On April 17, 2017, defendant was reincarcerated for violating the furlough conditions in connection with her prior sentence after testing positive for benzodiazepines. In August 2017, defendant's probation officer filed a probation violation complaint in this case alleging that defendant (1) violated the regulated-drugs condition by testing positive for benzodiazepines on a urinalysis test, (2) "ha[d] not yet completed the CRASH program,"[2] (3) "ha[d] not actively participated in or completed the Reparative Probation Program," and (4) was discharged from the Tapestry residential treatment facility in violation of the substance abuse condition.

¶ 4. At the October 2017 hearing on the probation violation complaint, the State relied exclusively on the testimony of defendant's probation officer. With respect to the alleged probation violation concerning regulated drugs, the probation officer testified that defendant had tested positive for benzodiazepines. At the beginning of the hearing, defendant put the court on notice that she would be calling a medical provider from the University of Vermont Medical Center

---

[2] The probation condition required defendant to take the "next available" CRASH course. However, the State did not allege a violation on the basis that defendant did not take the next available course but instead based it on the State's allegation that she had "not yet completed" the course.

to testify about prescribing defendant lorazepam for anxiety the day of the test that underlay the probation violation complaint. In her testimony, the probation officer addressed defendant's claim that she was prescribed the medication, asserting that testing showed multiple different benzodiazepine drugs in defendant's system. When defendant objected to the hearsay testimony, the court said "let's move onto the other allegations . . . the [c]ourt may not need to rely upon that." When defendant objected to similar hearsay testimony on redirect of the probation officer, the court said that it was "not going to make a finding on that." The court informed defendant that she need not call the medical provider she had planned to call.

¶ 5.     Concerning the alleged violation relating to the CRASH program, the probation officer testified that defendant had not enrolled in the CRASH program since the condition requiring that she complete the program was imposed. The officer was not sure what was happening for defendant between her May 2016 conviction and the time that the probation officer assumed responsibility for the case in December 2016, but acknowledged that it appeared that defendant had not spent much time in the community during that period. The probation officer also acknowledged that defendant was reincarcerated or in an inpatient program in Brattleboro beginning in April 2017. In particular, the officer testified that defendant was terminated from living at Northern Lights because she broke the facility's rules[3] and was briefly reincarcerated (apparently pursuant to her furlough in connection with her previous sentence) before she went to the Tapestry program—another inpatient program—in Brattleboro.

¶ 6.     With respect to the reparative board condition, the probation officer testified that she saw no evidence in the file that defendant had participated in the reparative board program,

---

[3]  Citing State v. Decoteau, 2007 VT 94, ¶ 14, 182 Vt. 433, 940 A.2d 661, defendant objected on hearsay grounds to the officer's testimony that she was terminated from the Northern Lights facility for violating the rules. After the probation officer stated that in her capacity as probation officer for all the women in that facility, she is regularly notified whenever someone has to leave, the trial court overruled the objection.

but also acknowledged that she had not arranged for defendant to attend the program, did not see anything in the file noting that defendant had been referred to the program, and did not remember talking to defendant about participating in the program.

¶ 7. Finally, the probation officer testified about defendant's requirement to complete substance abuse counseling as a probation condition. The probation officer testified that once she was released from jail in November 2016, defendant enrolled in the Maple Leaf residential treatment program. After successfully completing Maple Leaf, defendant moved into Northern Lights, a transitional-living facility for women that provided sober, supportive housing with regularly administered urinalyses. While at Northern Lights, defendant participated in and successfully completed "the Bridge" outpatient substance abuse program. During this time, defendant volunteered, held a job, and consistently passed her urinalysis screenings. After defendant was discharged from Northern Lights and briefly reincarcerated, she was referred to Tapestry, an inpatient program in Brattleboro. The probation officer testified that defendant "did not complete that program." When defendant objected to the testimony on the same hearsay grounds as her prior objections, the trial court asked the probation officer how she knew that defendant did not complete the program. The probation officer said, "I was advised by Tapestry that she was discharged." Defendant again objected, stating that the testimony was unreliable hearsay that the court should not consider. The court did not rule on the objection, but asked defense counsel, "Anything else for this witness?"

¶ 8. At the conclusion of the hearing, the trial court ruled from the bench that "[d]uring the period that she was on probation [defendant] failed to complete the CRASH program . . . to the satisfact[ion] of the probation officer" and found that defendant had violated her probation condition. The court also found that defendant did not complete her substance abuse counseling because she was discharged from the Tapestry program and also because she did not complete the "Northern Lights program." After finding that defendant violated two probation conditions, the

4

court revoked defendant's probation and imposed the underlying sentence of one to twelve months to serve, consecutive to the prior sentence she was still at that time serving.[4]

¶ 9.    On appeal, defendant challenges the trial court's finding that she violated the substance abuse treatment requirement on three grounds: (1) the condition that she "complete substance abuse counseling" did not provide fair notice that her failure to complete the Tapestry program, after having successfully completed two substance abuse treatment programs, would constitute a violation; (2) the trial court admitted hearsay evidence without conducting the required analysis; and (3) the evidence was insufficient to support a violation for failing to complete substance abuse counseling.  She argues that the trial court erred in concluding that she had violated the requirement that she complete the CRASH program when she still had many months left in her probation term to complete the program.  And, finally, defendant contends that the court improperly revoked her probation upon finding two violations without exercising any discretion as to the proper remedy for the violations.

¶ 10.   In a probation revocation hearing, the State carries the burden of proving by a preponderance of the evidence that the probationer has violated an express or clearly implied probation condition.  State v. Austin, 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996).  If the State meets its initial burden, the burden shifts to the probationer to prove the violation was not in his or her control, but rather resulted from extrinsic factors through no fault of the probationer.  Id. Examining a probation violation involves a mixed question of law and fact.  Id.  First, the trial court must make factual findings regarding the probationer's actions and then make an "implicit legal conclusion" regarding whether these actions constitute a probation violation.  Id. (quotation

---

[4]  The trial court did not address the other two violations alleged in the State's complaint. We construe the court's ruling as implicitly awarding judgment to defendant in connection with the claimed violation of the conditions prohibiting her from using regulated substances and requiring her to participate in the reparative board program.  We note that the better practice is to expressly rule on each of the respective claims made by the State unless the State voluntarily withdraws them or the Court dismisses them.

omitted). Accordingly, facts that are "fairly and reasonably supported by any credible evidence will stand," and "[w]e will uphold the trial court's legal conclusion if reasonably supported by" those facts. Id.

¶ 11. We generally review evidentiary rulings for abuse of discretion. State v. Eldert, 2015 VT 87, ¶ 14, 199 Vt. 520, 125 A.3d 139 ("We review evidentiary rulings in both civil and criminal trials for abuse of discretion."). However, we review the trial court's application of the legal framework surrounding an evidentiary question without deference. State v. Bryant, 2008 VT 39, ¶ 9, 183 Vt. 355, 950 A.2d 467.

¶ 12. Applying these standards, we reverse the trial court's determination that defendant violated the substance abuse treatment condition for two reasons. First, the trial court failed to apply the good cause test in considering whether to admit the hearsay testimony that was the sole evidence supporting the claimed violation. Second, there was no evidence, nor did the court make findings, that defendant failed to actively and successfully participate in the Tapestry treatment program. We reverse the trial court's determination that defendant violated the CRASH program requirement because there was no evidence that she did not intend to comply with this requirement, or that she had been put on notice that her immediate enrollment was required and she had ample time remaining in her probation term to complete the course.

I. Substance Abuse Condition

¶ 13. We reverse the trial court's determination that defendant violated the substance abuse condition on two related grounds. First, the only evidence arguably supporting the violation was inadmissible hearsay; second, the State's evidence concerning defendant's participation in the Tapestry program was insufficient to support a violation.[5]

---

[5] Our analysis focuses exclusively on the trial court's determination that defendant violated her substance abuse treatment condition by failing to complete the Tapestry program. To the extent that the trial court found that defendant had failed to complete the "Northern Lights" program, the finding is unsupported by the evidence. The probation officer testified that Northern Lights is not

6

## A. Hearsay Evidence in Probation Violation Proceedings

¶ 14. In a probation revocation hearing, the rules of evidence do not apply and "hearsay is not categorically inadmissible." Eldert, 2015 VT 87, ¶ 16. However, to square the State's ability to present hearsay testimony with defendant's due process rights under the Fourteenth Amendment to confront adverse witnesses, the trial court must explicitly find "good cause" to admit the hearsay evidence. Id.

¶ 15. In evaluating good cause, the trial court must balance "the probationer's right to confront a witness against the grounds asserted by the government for not requiring confrontation." Id. ¶ 18 (quotation omitted). There are at least two factors that should be evaluated in examining the State's side of the balance: the first is the State's explanation of "why confrontation is undesirable or impractical." Id. (quotation omitted). For instance, the State might point to a danger of physical harm to a live witness, or to the expense to the State to deliver a live witness, as factors supporting a finding of good cause. Second, the reliability of the evidence offered by the State in place of live testimony impacts the weight of the State's side of the "good cause" balance. Id. "Where the government demonstrates that the burden of producing live testimony would be inordinate and offers in its place hearsay evidence that it is demonstrably reliable, it has made a strong showing of good cause." Id. (quotation omitted). Where the government shows neither

---

a substance abuse treatment program at all, but provides a supportive and sober transitional living facility. She further testified that while living at Northern Lights defendant did successfully complete the outpatient Bridges treatment program.

Defendant argues that the probation condition that she "complete substance abuse counseling" provided insufficient notice that her failure to complete the third substance abuse counseling program would be a violation, and that she never got notice that her completion of the Tapestry program was a condition of probation, as opposed to a requirement incident to her ongoing sentence on prior charges. It is well-established under our caselaw that a probationer is entitled to fair notice of probation conditions to meet the due process requirement of the Fourteenth Amendment. See, e.g., State v. Bostwick, 2014 VT 97, ¶ 17, 197 Vt. 345, 103 A.3d 476. Fair notice requires that probation conditions are well-defined and transparent. Id. Because we reverse defendant's probation revocation on other grounds, we do not address this argument.

7

that a live witness would impose inordinate burdens nor that the proffered hearsay bears indicia of reliability, the probationer is entitled to confrontation. Id.

¶ 16. We have identified several important considerations bearing on the reliability of hearsay testimony, including whether: (1) there is corroborative evidence; (2) the hearsay statement is an objective fact rather than a conclusory statement; (3) the hearsay statement is sufficiently detailed; (4) the source of the hearsay has a personal or adversarial relationship with the defendant; and (5) the hearsay statement is offered to prove the central issue in the case. Id. ¶ 20; see also Decoteau, 2007 VT 94, ¶ 14 (reviewing cases identifying factors bearing on reliability of hearsay testimony).

¶ 17. Here, the trial court did not apply the good cause balancing test when it admitted the hearsay evidence during the probation revocation hearing. It made no findings on the record at all to support its denial of defendant's confrontation rights. Moreover, the evidence does not support admission of the objected-to testimony.

¶ 18. First, the State neither provided an explanation as to why a live witness was undesirable or impractical, nor suggested that the cost to produce the live witness was prohibitive. And there is nothing in the record to support the notion that live testimony would place a significant burden on the State.

¶ 19. Second, the trial court did not weigh the factors to identify traditional indicia of reliability, and if it had, it would have recognized the probation officer's testimony was inadmissible. Although defendant's discharge from the Tapestry program may be an objective fact, as set forth below, the real issue in this case is the circumstances giving rise to this discharge. The probation officer offered no testimony or details explaining the circumstances of defendant's discharge. To the extent that the trial court inferred from the objected-to testimony that defendant did not comply with the program requirements because she was discharged, that inference—which involves conclusions as well as objective facts—is unsupported by corroborating evidence or

8

sufficient details to enhance the reliability of the conclusion. See Watker v. Vt. Parole Bd., 157 Vt. 72, 77, 596 A.2d 1277, 1280 (1991) (concluding that hearsay is reliable where specific observations of various police officers include same details such as weather and where victim was found); State v. Finch, 153 Vt. 216, 218, 569 A.2d 494, 495 (1989), overruled on other grounds by Austin, 165 Vt. at 389, 685 A.2d at 1076 (concluding that hearsay testimony was reliable because statements of two hearsay witnesses were mutually supportive). Moreover, the probation officer did not identify the Tapestry employee who made the report by name or role in defendant's care, so the court had no basis for assessing that employee's knowledge of defendant's compliance with the condition. And the officer's testimony was the State's only evidence to prove this case's central issue. See State v. Blaise, 2012 VT 2, ¶ 25, 191 Vt. 564, 38 A.3d 1167 (stating only evidence of probation violation was hearsay evidence so it cannot uphold trial court's conclusion that defendant violated term of probation).

## B. Sufficiency of the Evidence

¶ 20. Our assessment of the hearsay question is tied to our analysis of the sufficiency of the evidence. The probation officer's testimony that defendant did not complete the Tapestry program, without more, is insufficient to support the violation. "When determining the merits of a probation violation based on a probationer's expulsion from a court-ordered treatment program, the ultimate question for the court is whether the probationer participated satisfactorily in the program." State v. Coyle, 2005 VT 58, ¶ 9, 178 Vt. 580, 878 A.2d 1062. The court must look beyond the fact of a probationer's termination from a program to the reasons for that termination because the court, not the treatment provider or probation officer, is the ultimate judge of whether the defendant has violated a probation condition. State v. Masse, 164 Vt. 630, 631-32, 674 A.2d 1253, 1255-56 (1995) (rejecting argument that this Court reviews probation officer's conclusion that probationer has not satisfactorily completed program for abuse of discretion and explaining that trial court is ultimate arbiter of whether defendant violated condition); see also State v. Cavett,

9

2015 VT 91, ¶ 3, 199 Vt. 546, 126 A.3d 1287 (holding that court must find substantive ground for revocation and accordingly must assess basis for defendant's termination from program to determine whether it amounted to violation of probation).

¶ 21. In this case, there is no evidence from which the trial court could conclude that defendant failed to adequately participate in her treatment; there is no evidence at all to support any conclusion about the reason for her termination from the Tapestry program.

## II. CRASH Program Condition

¶ 22. Defendant's failure to complete the CRASH program at the time of the State's violation complaint, by itself, was not a violation of probation. The probation violation complaint alleges that defendant violated her probation condition because she "ha[d] not yet completed the CRASH program." In finding a violation, the trial court failed to take into account that significant time remained in defendant's probationary sentence; in fact, the consecutive one-to-twelve-month sentence for the charges underlying the probation in this case did not actually begin to run until defendant completed her sentence for a previous charge—several months after the probation violation hearing. By itself, the failure to complete a requirement when ample time remains in a probationer's term to do so is not a probation violation. See Blaise, 2012 VT 2, ¶¶ 21-25 (holding that trial court erred when it decided defendant violated probation conditions requiring that he pay fine and perform community service where there was no evidence that defendant had been provided payment schedule for fine or performance schedule for community service, and defendant had substantial time remaining in his probation term).

¶ 23. We have recognized that a defendant may be found to have violated a condition or requirement of probation even if adequate time remains within the probation term to complete the requirement where a defendant has "actively refused to participate" or the defendant's conduct evinces an intent not to comply. See, e.g., In re J.S., 2018 VT 49, ¶ 16 n.5, __ Vt. __, __ A.3d __ (explaining that "once a probationer refuses to comply with a condition, the fact that time remains

10

in which [the probationer] could complete the condition is not relevant to whether the court can find a violation"); State v. Provost, 2014 VT 86A, ¶¶ 15-16, 199 Vt. 568, 133 A.3d 826 (rejecting on plain error review argument that defendant did not violate requirement that he complete domestic violence program because he had adequate time to complete it where his probation officer informed him that if he did not complete his third scheduled intake for program he would be cited for violating probation, and he failed to complete intake due to his own actions). There is no evidence of any refusal by defendant here. She was incarcerated or committed to inpatient treatment for much of the period between the imposition of the probation condition in May 2016 and the violation complaint in August 2017. There is no evidence that during the several months she was in the community she declined to enroll in the program, or that this exception is otherwise applicable.

¶ 24. For the above reasons, we reverse the trial court's determinations that defendant violated two probation conditions, and the resultant revocation of her probation.[6]

Reversed.

FOR THE COURT:

_____

Associate Justice

---

[6] Because we strike down the two violations upon which defendant's probation revocation was based, we need not decide whether the trial court exceeded its discretion in revoking probation on the basis of those violations. We note, though, that revocation does not automatically follow from a court's conclusion that a probationer has violated probation conditions. The Legislature has made it clear that revocation of probation is a discretionary ruling, and has identified a host of alternative sanctions the court may impose upon violation of probation. 28 V.S.A. § 304. Moreover, before ordering revocation and confinement, the court must find based on a defendant's original offense and intervening conduct that confinement is necessary to protect the community, the probationer is in need of treatment that can most effectively be provided if the probationer is confined, or that it would unduly depreciate the seriousness of the violation if probation were not revoked. 28 V.S.A. § 303(b). The trial court in this case made no findings that indicate it conducted such an assessment.