NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 28

No. 2018-240

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Criminal Division |
| | |
| Austin R. Burnett | September Term, 2019 |

Helen M. Toor, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Joshua S. O'Hara, Appellate Defender, Montpelier, for
  Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Skoglund, J. (Ret.),
        Specially Assigned

¶ 1.     **ROBINSON, J.**  Defendant appeals the trial court's decision that he violated a condition of his probation. Defendant argues the State both failed to prove the conditions of his probation and failed to prove that his conduct amounted to a violation. We conclude that the State failed to prove that defendant's conduct amounted to a violation of the probation condition (VOP) and accordingly reverse.

¶ 2.     Defendant's relevant underlying convictions were for sexual assault of a victim under the age of sixteen (Docket No. 283-6-15) and sexual assault, no consent (Docket No. 284-6-15). He pled guilty and the court sentenced him to concurrent sentences of four to six years, suspended except for thirty-eight months, in No. 283, and five years, deferred, in No. 284. During

sentencing, the court stated, "You'll be on probation until further order of the court with the sex-offender special conditions as you have already signed, and also with the requirement to undergo mental health evaluation." The court also stated that defendant would be subject to certain "standard" probation conditions.

¶ 3. The court apparently generated one probation order in each docket, and the orders were filed separately in the court's corresponding files. Both orders impose eight standard conditions on defendant. Neither is signed by defendant. In addition to the specified standard conditions, the deferred-sentence probation order in No. 284 imposes "Sex Offender Special Conditions," although there is no record of any specific sex-offender conditions in the court file. The partially-suspended-sentence probation order in No. 283 imposes "Sex Offender Special Conditions of probation attached hereto." This file does contain a signed list of sex-offender conditions. One of those conditions provides, "You shall participate fully in the Vermont Treatment Program for Sexual Abusers [VTPSA] during the course of your unsuspended sentence. Failure to complete said program while incarcerated may result in a violation of your probation."

¶ 4. This appeal arises from defendant's alleged violation of this probation condition.[1] The State filed substantially identical complaints for violation of probation in both dockets.[2] The trial court heard them at the same time. The affidavit accompanying the State's VOP complaint alleges:

> On 12/31/2017 I received information from Corrections Service Specialist (CSS) Theresa Stone, with the [VTPSA] at the

---

[1] In 2017, defendant pled guilty to a different violation of probation in No. 283. The court changed defendant's partially suspended sentence for the under-sixteen sexual assault to four to five years, suspended except for forty-one months. The new probation order generated by the court included the same standard conditions and referenced the sex-offender conditions. It is unsigned by defendant. No new list of special sex-offender conditions was generated or signed at resentencing. The 2017 VOP is not at issue in this appeal.

[2] The State filed the VOP complaint in No. 283 in December 2017, and in No. 284 in April 2018.

Nor[th]west Correctional Facility, that [defendant] was facing potential removal from the program because he had been convicted of a major disciplinary report for attempting to pick the lock on his cell door. On 12/13/2017 the VTPSA team evaluated the situation and determined these actions, in conjunction with other non-compliant behavior [defendant] had been exhibiting were directly risk related and resulted in [defendant's] removal from the VTPSA programming.

At this time it is unclear when and if [defendant] will be reaccepted into the VTPSA program.

¶ 5. The parties entered the VOP hearing anticipating that defendant would admit to the violation.[3] At the hearing, the State represented that defendant was "kicked out" of the VTPSA facility after "he picked a lock." The court noted that the VOP complaint filed by the State also listed "other non-compliant behavior," and asked whether the defendant was planning to admit to any other behavior. The State said that no other admission was required, and defendant's attorney stated that the other behavior was "older" and "I think the lock picking covers it."

¶ 6. However, the agreement between the parties broke down when the court expressed doubt about whether picking a lock violated the identified condition. The trial judge began a colloquy with the defendant, but interrupted herself before the defendant admitted to the conditions or to a violation, stating: "The allegation here is that you were to—well, actually folks, I guess I have a question as I'm reading this, since the condition was to fully participate." The court expressed doubt as to whether "picking a lock" amounted to a failure to 'fully participate.' " The State argued that the rules of VTPSA require compliance with security measures, and that defendant failed to "follow the rules." However, the court concluded, "I don't think that I can say that picking the lock is not participating. It might be breaking a rule, but it's not exactly what we think of as non-participation in the program." The proceedings paused to allow the parties to confer, after which defense counsel stated, "At this point, Your Honor, we do not have an

_____

[3] In fact, the entries in both dockets reflect that defendant did admit to the violation; this ultimately proved to be incorrect.

3

admission." The court hesitated to proceed with a hearing, but did so upon the State's affirmation that it had "some other evidence to present on some of the other issues, other than the lock picking."

¶ 7. The State first presented the testimony of a risk-intervention-services manager at the Department of Corrections (DOC) who testified that defendant "was recently terminated in December of '17 for attempting to pick a cell lock on the unit." He also noted that defendant "had some concerning behavior," including "cho[osing] not to follow redirections" during the Workforce Readiness program, being suspended from the Community High School of Vermont, stating that he was going to be "a dick to his case worker," and disciplinary problems resulting in termination of his employment at the facility's kitchen. He testified that the programming, including VTPSA, community high school, and workforce development, is now treated as "all one giant program," designed to "help offenders move back into the community."

¶ 8. The risk-intervention-services manager testified about several of the rules included in the VTPSA Orientation Handbook that "these guys are advised of when they're in the VTPSA program." The State did not offer the handbook into evidence, but the risk-intervention-services manager testified that the "active rules of the VTPSA program" include the following: no physical violence or threats of physical violence; no use of alcohol or drugs; no disobeying orders given by treatment providers or facility staff; no sexual contact with others or propositioning others for sexual contact; no unauthorized contact with, or possessing pictures of, any person that the offender has sexually victimized; follow the DOC policy of not using or possessing materials that feature nudity or sexually explicit pictures, drawings, or writing; participate actively; be respectful; maintain good hygiene; get approval for computer use outside the offender's treatment living unit; follow television guidelines; possess and display only appropriate pictures; and get approval for contact with minors. The risk-intervention-services manager said that the statement about defendant's case worker violated the rule that participants must "be respectful," and that

4

defendant's going into his cell when he had been locked out of it would violate the rule not to disobey orders.

¶ 9. The State presented the testimony of two witnesses regarding the lock-picking incident, and it became clear that defendant had picked the lock to enter, rather than exit, his cell instead of waiting to be let in as instructed. First, a correctional officer testified that on the date of the incident she was "doing a tour" of the unit. While she was checking other cells, defendant and another inmate "insisted on getting into their cell." She told them to wait, and when she returned to them, the door had been opened. She testified that defendant told her he had unlocked the door with a hairbrush because "he just felt like it." On cross-examination, she testified that the door "looks like a wooden door" and is not a barred or all-metal door. Second, the State called a facility shift supervisor, who testified that he reviewed camera footage of the incident and that defendant had in fact picked the lock. On cross examination, he testified that the doors are "like a car door. You can open it from the inside, but you can't open it from the outside."[4]

¶ 10. The State did not seek admission of the probation conditions themselves, and neither called any witnesses who attested to reviewing the written probation conditions with defendant nor offered any evidence that defendant had signed the written probation conditions or the special sex-offender conditions incorporated into the probation conditions.

¶ 11. At the conclusion of the hearing, the court determined that defendant failed to obey the correctional officer's order to "wait for her to come and unlock the door when she was ready." The court stated that "it wasn't entirely clear that all of the requirements that we've heard about work and employment were actually part of this program, as opposed to some other program, so I don't think that I can make a finding that failure to comply in those elements violated this program." However, the court did find "that he violated an order, [and] that there was a specific

---

[4] The inmates shared a bathroom, so inmates had to be able to exit their cells without a key.

condition of the program to follow orders." Upon finding the probation violation, the court revoked probation in No. 283, resulting in a sentence four to five years to serve. It also struck the five-year deferred sentence in No. 284 and imposed the mandatory sentence of three years to life.

¶ 12. On appeal, defendant argues: (1) the State failed to prove that defendant violated the terms of his probation and deferred sentence, because he was expelled from VTPSA for reasons unrelated to the program and the condition did not provide him notice that his conduct would constitute a violation; (2) the State failed to meet its burden to prove that defendant received written notice of the terms of defendant's probation and deferred sentence, because it presented no evidence as to the conditions; and (3) the State failed to prove defendant had any sex-offender special conditions in connection with his deferred sentence (No. 284), because the court's file contains no record of any sex-offender conditions.

¶ 13. Defendant preserved his arguments that his act of picking a lock to enter his room did not violate the VTPSA condition, or that the condition did not provide him reasonable notice that such conduct would amount to a probation violation. Accordingly, we will affirm in the face of error only if the error is harmless.[5] State v. Larkin, 2018 VT 16, ¶ 21, 206 Vt. 535, 183 A.3d 589. The State has the burden of establishing by a preponderance of the evidence that defendant violated a term of his probation. State v. Decoteau, 2007 VT 94, ¶ 8, 182 Vt. 433, 940 A.2d 661. "We review the trial court's determination that defendant violated his probation in two steps." State v. Bostwick, 2014 VT 97, ¶ 11, 197 Vt. 345, 103 A.3d 476. We will uphold the court's factual findings if supported by credible evidence. Id. We will uphold the court's "implicit legal conclusion that the probationer's actions violated his probationary terms" if it is reasonably

---

[5] Because we reverse the revocation on the basis that the VTPSA condition did not provide reasonable notice to defendant that his act of picking a lock to return to his room when he had been instructed to wait would constitute a probation violation, we do not reach defendant's alternate arguments.

6

supported by the findings and is not an erroneous interpretation of the law. Id. Here, only the legal conclusion is at issue.

¶ 14. We conclude that the State failed to prove that defendant's conduct—picking the lock to return to his room after the corrections officer instructed him to wait—amounted to a violation of the condition requiring him to "participate fully in the Vermont Treatment Program for Sexual Abusers." We reach this conclusion because, when the State seeks to revoke probation on account of a probationer's expulsion from court-ordered programming, the court must independently assess whether the conduct that gave rise to the expulsion amounts to a violation of the probation condition. State v. Stuart, 2018 VT 81, ¶ 20, 208 Vt. 127, 196 A.23d 306. In making that determination, the court must construe probation conditions such that they give fair notice to a probationer of what conduct will give rise to revocation. Id. ¶ 13 n.5. In this case, the condition requiring defendant to "participate fully" in and complete the VTPSA program did not give him notice that the conduct that triggered the VOP complaint violated the terms of his probation. For that reason, the trial court erred in concluding that defendant had violated the condition and in revoking his probation. We expand on these considerations below.

¶ 15. We have repeatedly held that " '[w]hen determining the merits of a probation violation based on a probationer's expulsion from a court-ordered treatment program, the ultimate question for the court is whether the probationer participated satisfactorily in the program.' " Id. ¶ 20 (quoting State v. Coyle, 2005 VT 58, ¶ 9, 178 Vt. 580, 878 A.2d 1062 (mem.)). "The court must look beyond the fact of a probationer's termination from a program to the reasons for that termination because the court, not the treatment provider or probation officer, is the ultimate judge of whether the defendant has violated a probation condition." Id. (citing State v. Masse, 164 Vt. 630, 631-32, 674 A.2d 1253, 1255-56 (1995) (mem.)); see also State v. Cavett, 2015 VT 91, ¶ 15, 199 Vt. 546, 126 A.3d 1287 (holding that court must assess basis for defendant's termination from program to determine whether it amounted to violation of probation condition).

7

¶ 16.   In meeting its burden to prove a VOP, the State must establish "that there has been a 'violation' of the <u>express</u> conditions of probation, or of a condition so <u>clearly implied</u> that a probationer, in fairness, can be said to have notice of it." <u>State v. Austin</u>, 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996) (quoting <u>Resper v. United States</u>, 527 A.2d 1257, 1260 (D.C. 1987)); see also <u>State v. Bryan</u>, 2016 VT 16, ¶ 15, 201 Vt. 298, 142 A.3d 204 (explaining that to make out case of VOP, "the State must establish by a preponderance of the evidence that the defendant violated an 'express' condition of probation" that "gives fair notice as to what acts may constitute a violation" (quotation omitted)).  "Fair notice requires that probation conditions are well-defined and transparent." <u>Stuart</u>, 2018 VT 81, ¶ 13 n.5.

¶ 17.   For that reason, we have reversed trial court decisions revoking probation where the condition purportedly violated did not provide the defendant clear enough notice that the conduct giving rise to the VOP complaint would constitute a violation.  See, e.g., <u>State v. Galanes</u>, 2015 VT 80, ¶ 24, 199 Vt. 456, 124 A.3d 800 (holding that condition requiring probationer to inform probation officer of name and contact information of any person with whom probationer was planning to begin sexual relationship did not provide sufficiently clear notice that unplanned sexual encounter with housekeeper would constitute violation); <u>State v. Blaise</u>, 2012 VT 2, ¶ 1, 191 Vt. 565, 38 A.3d 1167 (mem.) (reversing determination that defendant violated three conditions of probation when neither conditions nor contract with probation officer gave defendant sufficient notice that conduct for which he was sanctioned would constitute violation); <u>State v. Sanville</u>, 2011 Vt 34, ¶ 10, 189 Vt. 626, 22 A.3d 450 (mem.) (reversing VOP determination where condition prohibiting "violent or threatening behavior" did not give defendant notice that expressing his displeasure at perceived injustice in "mouthy and obnoxious" way would amount to violation).

¶ 18.   In this case, the requirement that defendant "participate fully" in VTPSA did not give him notice that his conduct here would violate his conditions of probation.  Again, the

8

condition at issue provides: "You shall participate fully in the Vermont Treatment Program for Sexual Abusers during the course of your unsuspended sentence. Failure to complete said program while incarcerated may result in a violation of your probation." The State did not present evidence concerning defendant's attendance, engagement, or progress in VTPSA itself. It did not present evidence concerning his interactions with staff of the treatment program. Instead, the State proved that defendant picked a lock to enter a room after a corrections officer instructed him to wait. The State's case rests on reasoning that: 1) defendant was required to "participate fully" in and complete the VTPSA program; 2) in order to "participate fully" in and complete the VTPSA program defendant is required to comply with all of the rules of the program; 3) one of the rules of the program is that participants comply with orders from treatment providers or facility staff; and 4) defendant's act of picking the lock to enter his room after being instructed to wait by a correctional officer violated this program rule. The trial court's initial skepticism that defendant's insubordinate act could be reasonably understood as a violation of the probation condition requiring him to complete VTPSA was well founded. Based on the State's logic, failure to maintain good hygiene or to follow television guidelines—both apparently requirements of VTPSA—would be probation violations as well.

¶ 19. We do not mean to suggest that violating a rule of VTPSA that regulates conduct outside of the treatment sessions themselves cannot constitute a violation of the condition requiring full participation in VTPSA. Many of the rules of VTPSA—such as rules prohibiting sexual contact with others, or propositioning others for sexual contact, as well as unauthorized contact with or possession of pictures of a person the participant has sexually victimized—are clearly designed to advance the core objectives of VTPSA. Evidence that defendant was on notice of these program rules would likely suffice to establish defendant's notice that violation of the rules would constitute a probation violation; that compliance with such rules is part and parcel of the probation condition requiring participation in and completion of the program is "so clearly implied

9

that [defendant], in fairness, can be said to have notice of it." Austin, 165 Vt. at 398 (quotation omitted).

¶ 20. Likewise, when the State presents evidence that a probationer has received clear notice that a program rule governing behavior throughout the facility is intrinsic to participation in the program and may lead to termination, the probationer's violation of that rule can constitute a violation of the probation condition requiring participation in the programming. In State v. Cavett we implicitly held that a defendant could be found in violation of a probation condition requiring him to participate fully in and complete VTPSA on the basis of throwing a crumpled paper toward a correctional officer who was investigating disciplinary reports lodged against the defendant. 2015 VT 91. In that case, the court heard testimony that the defendant had attended a brief VTPSA orientation where he went over the VTPSA Treatment Agreement and received the VTPSA Orientation Handbook. Id. ¶ 3. The rules in the handbook described a "cardinal rule" against "physical violence or threats of physical violence" and cautioned that breaking this cardinal rule "may result in termination from the program." Id. The defendant had signed a statement attesting that he had read the VTPSA Orientation Handbook and agreed to follow all the rules and regulations in the handbook. Id. We remanded for the trial court to determine whether defendant's actions violated a "cardinal" rule of the program, and to exercise its discretion as to whether to respond to a violation by revoking the defendant's probation. Id. ¶ 19.

¶ 21. In this case, the State presented no evidence that the disobedience rule was a "cardinal rule" of VTPSA, and its evidence that defendant was even advised of the rules is thin. In contrast to evidence that defendant was informed of a "cardinal rule" of VTPSA against violence or threats that could lead to termination from the program, the rule at issue here is only one of a litany of rules—including rules requiring participants to maintain good hygiene and follow television guidelines. The State offered no evidence that the rule was highlighted in a way that provided defendant notice that any violation of the rule would be tantamount to violating

10

conditions of probation. Moreover, the State did not offer the handbook into evidence or establish that defendant had an opportunity to read its requirements. The only evidence in the record from which the court could infer that defendant was advised of the program rules was the acknowledgment of a State witness, on cross-examination, that "these guys are advised of" the rules when they are in VTPSA.

¶ 22. On this record, we cannot conclude that it is "clearly implied" in the probation condition requiring defendant to complete VTPSA that his act of picking the lock and entering a room he was otherwise authorized to enter when he had been told to wait would be a probation violation. This might be a different case if defendant had picked a lock to exit his room at a time when he was supposed to be confined, or if he had picked a lock to enter another inmate's room without authorization. But the State seems to argue that any act of insubordination, because it violates the VTPSA rules, constitutes a probation violation. We emphasize that we do not endorse defendant's insubordinate conduct. The question of whether he may properly be disciplined under applicable prison rules is not before us. Nor is the question of whether defendant was properly terminated from the VTPSA program. But if the State seeks a probation condition pursuant to which any act of disobedience to facility staff amounts to a violation of probation, it must do so expressly. If a court imposes such a condition, then defendant will be on notice of the court's expectations. Alternatively, to the extent the State rests its violation complaint on a probation condition requiring the defendant to complete a program, the State must show that the defendant was on reasonable notice of express requirements of the program clearly identifying the conduct that could lead to termination.

¶ 23. The stakes are high for probationers facing VOP proceedings, which is why we must ensure that they are subject to VOP findings, and the possibility of probation revocation, only when their conduct violates clear probation conditions. In this case, as a result of entering his cell when a corrections officer told him to wait, defendant faces imposition of a sentence of five years

11

to life.  On this record, the State has not shown that defendant violated a probation condition of which he had clear notice.

Reversed.

FOR THE COURT:

_____

Associate Justice