NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 52

No. 22-AP-231

| State of Vermont | Supreme Court |
|---|---|
| | On Appeal from |
| v. | Superior Court, Windsor Unit, Criminal Division |
| William F. Wheelock III | June Term, 2023 |

Paul F. Hudson, J.

Evan Meenan, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Seibert, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton and Cohen, JJ., and Johnson, J. (Ret.), and Grearson, Supr. J., (Ret.), Specially Assigned

¶ 1.     **REIBER, C.J.**   In October 1987, defendant William Wheelock III shot and killed James Brillon with a .410 caliber shotgun. He was convicted by a jury of second-degree murder and sentenced to seventeen-years-to-life, with a split sentence to serve seventeen years. Following defendant's release from probation in 1999, his Vermont probation officer (PO) filed three separate violation-of-probation (VOP) complaints against him in 1999, 2002, and 2003. In 2004, after the third VOP complaint was filed the year before, the VOP court concluded that defendant violated three probation conditions, revoked probation, and imposed the original sentence of life imprisonment. Defendant has remained incarcerated since his 2003 arrest on the most recent VOP complaint, more than twenty years ago. In April 2018, defendant filed a petition for post-

conviction relief (PCR), arguing that his attorney rendered ineffective assistance by failing to appeal the 2004 revocation decision. The PCR court granted the petition and permitted defendant to appeal the 2004 violations and revocation of probation to this Court. On appeal, we affirm the probation violations and reverse and remand the court's revocation of probation.

## I. Probation Violations

¶ 2.    On appeal, defendant challenges both the VOP court's probation-violation findings and its revocation of probation, arguing that the court erred by (1) violating him for not completing treatment without making a finding defendant's participated unsatisfactorily in treatment and (2) finding that defendant was actively using alcohol and drugs and that he had a history of violence.

## A. Factual and Procedural History

¶ 3.    This case has a long and complex history, the relevant parts of which are summarized below. As discussed above, defendant was sentenced to seventeen-years-to-life, split to serve seventeen years, with the balance suspended on probation. At sentencing in 1989, the trial court found that, at the time defendant shot the victim, defendant had been on a several-month-long binge on alcohol and drugs, and that his actions were directly related to his substance abuse. Ten years later, in December 1999, defendant earned conditional probationary release. The court accordingly imposed a condition prohibiting the purchase, possession, or consumption of alcohol. Three days after his release, defendant consumed alcohol, in violation of the no-alcohol condition, after which his Vermont PO filed a VOP complaint. Defendant admitted to the violation and was resentenced to twenty-one-years-to-life.

¶ 4.    The first VOP court imposed new conditions, including: Condition 15, requiring defendant to "attend and participate in alcohol and/or drug screening, counseling, treatment and rehab. as directed by your P.O. and complete same to the full satisfaction of your P.O. and sign any releases about your progress in treatment"; Condition 16, requiring defendant to "attend and

2

participate in a residential treatment program as directed by your P.O. and complete the same to the full satisfaction of your P.O."; and Condition 18, requiring defendant to "live and work only where approved by your P.O." The court also imposed Condition 22, which required defendant to "attend, participate in and successfully complete the Pathways program both in-house and aftercare." Pathways is a year-long cognitive self-change therapeutic community for violent offenders based at Northern State Correctional Facility in Newport, Vermont, where participants live in the same section of the prison, eating and interacting with one another.

¶ 5. In March 2002, defendant's PO filed the Second VOP complaint following his July 2001 removal from the Pathways program. A VOP hearing was held in July 2002, when on stipulation of the parties and the court's approval, defendant would become eligible for probation upon completion of Pathways and other requirements not relevant here.

¶ 6. In October 2002, after the second VOP complaint was filed, the VOP court issued a modified probation order, imposed the original sentence, all suspended, with probation conditions that were effectively identical to those previously imposed by the court. Defendant received a copy of the modified probation order containing these conditions, and his PO reviewed these conditions with defendant, who signed the order and stated during this review that he understood each condition.[*]

¶ 7. While the Second VOP complaint was pending, defendant attended and completed the Pathways program in September 2002. He was released to Phoenix House, a long-term residential treatment facility in Springfield, Massachusetts. His out-of-state supervision was conducted according to the Interstate Compact for the Supervision of Adult Offenders, authorized by 28 V.S.A. § 1351.

---

[*] The Second VOP complaint was dismissed in December 2002.

3

¶ 8.    Phoenix House is "a residential treatment program of 9-18 months duration in a therapeutic community using behavior modification and peer contact to bring about recovery from substance abuse" that is "accredited under the Massachusetts public health laws." The court described it as "a tough program, and a hard place in which to succeed." Defendant received a copy of the program rules after applying, and he signed an acceptance that acknowledged having read and understood the rules. Defendant had already completed the Pathways program, as noted above, which he testified was "the same program [as Phoenix House], but it's not in central Springfield." Phoenix House had three "cardinal rules": no drugs, no violence or threats of violence, and no sexual contact. While at Phoenix House, defendant was supervised by a Massachusetts PO. Defendant remained at Phoenix House for four months, until January 2003.

¶ 9.    In early January 2003, a "tight house," a set of stringent restrictions, was imposed on all Phoenix House residents because of suspected drug use among certain residents. Defendant, who was hospitalized for a respiratory condition shortly before the tight house commenced, was not suspected of drug use but was accused, on January 2, of importing drugs into Phoenix House. He and the other residents, who were usually permitted to have second servings during breakfast, lunch, and dinner, were allowed to have only one serving per meal during the tight house. All residents received work assignments during the tight house and all appointments between residents and probation officers were canceled. Phoenix House staff disciplined defendant during this tight house for gesturing, in violation of the tight-house communication restrictions, for a tool needed to complete a task assigned to him by his counselor.

¶ 10.    On January 4, 2003, defendant was suspected of kissing another resident in violation of the "cardinal rule" against sexual contact. Staff discharged the other resident after she admitted to the kiss. Defendant refused to answer when questioned about the alleged violation. Defendant testified at the February 2004 merits hearing related to the third VOP complaint that he

4

"said, just give me the papers to sign, let me get my money, and I'll leave. I said I'm not even going to get into this. I'll just go."

¶ 11. On January 6, 2003, defendant gathered his belongings and left Phoenix House. He did not attempt to contact his PO upon departure. On January 7, the Massachusetts Interstate Compact Unit, responsible for defendant's supervision in Massachusetts, informed the Vermont authorities that defendant had left the program and asked that a warrant be issued for his arrest. The next day defendant's Vermont PO filed a third VOP complaint, along with the PO's sworn affidavit, alleging violations of Conditions 15, 16, and 18. After staying in a hotel for two days with the woman he kissed, defendant reported to probation in Massachusetts, was arrested, and returned to Vermont, waiving extradition. At the hearing on the third VOP complaint, defendant admitted that he violated one of Phoenix House's cardinal rules. Defendant also introduced evidence in his defense relevant to disposition. Defendant stated that he had quit drinking for several years, addressing the concern and principal rehabilitative purpose of the probation conditions (alcohol). He further provided that although he walked away from Phoenix House, he voluntarily turned himself in to his PO two days later.

¶ 12. The VOP court found in February 2004 that defendant violated Condition 15 by failing to complete treatment and rehabilitation in the Phoenix House program. Further, the VOP court found that defendant violated Condition 16 by eloping from Phoenix House. Finally, the VOP court found defendant violated Condition 18 when for at least two days defendant's POs did not know where defendant was. The VOP court revoked defendant's probation as a result of the violations.

¶ 13. Defendant filed a PCR petition seeking relief from the violations and revocation of probation order. Thereafter, in March 2022, the State consented to judgment in favor of defendant to permit him to appeal the 2004 order. The PCR court issued a remand order to the criminal

5

division to permit defendant to appeal. Thereafter an appeal was filed in this Court from the violation and probation-revocation order dated July 12, 2004.

## B. Analysis

¶ 14. On appeal, defendant challenges the VOP court's findings that he violated Conditions 15 and 16. Defendant does not challenge the VOP court's finding that he violated Condition 18, effectively conceding that violation. As discussed below, we conclude that the VOP court applied the correct legal standard in finding that defendant violated Condition 15, requiring defendant to participate in drug or alcohol treatment as directed by and to the full satisfaction of his probation officer, and Condition 16, requiring defendant to attend, participate in, and complete a residential treatment program. Because the VOP court's decision was supported by its factual findings, we affirm the violations.

¶ 15. "A trial court's conclusion that a defendant violated a probation condition involves a mixed question of law and fact." State v. Blaise, 2012 VT 2, ¶ 12, 191 Vt. 565, 38 A.3d 1167 (mem.). "The trial court must first make a factual determination of the probationer's actions, and then make an implicit legal conclusion that the probationer's actions violated his probationary terms." Id. (alteration and quotation omitted). "We accept the trial court's findings of fact if supported by credible evidence," and "[t]he court's legal conclusions must stand if supported by the findings." Id.

¶ 16. The authority to require participation in a residential treatment program is found in Chapter 5 of Title 28 of the Vermont Statutes Annotated. Section 252(a) states, in relevant part, that

> [t]he conditions of probation shall be such as the court in its discretion deems reasonably necessary to ensure that the offender will lead a law-abiding life or to assist the offender to do so. The court shall provide as an explicit condition of every sentence to probation that if the offender is convicted of another offense during the period for which the sentence remains subject to revocation, then the court may impose revocation of the offender's probation.

6

Sections 252(b) and (c) provide that conditions of probation may include residential treatment and details of employment and residence in regular reports to his probation officer all as documented to him upon release. Additionally, § 254(a) states, in relevant part, that

> The court may require a person as a condition of probation to participate as a resident or nonresident in programs at a treatment center for all or part of the period of probation, provided that the Commissioner [of Corrections] certifies that adequate treatment facilities, personnel, and programs are available. If the Commissioner determines that the person's residence in the center or participation in its programs, or both, should be terminated, because the person can derive no further significant benefits from such residence or participation, or both, . . . he or she shall so notify the court, which shall thereupon, by order, make such other provision with respect to the person on probation as it deems appropriate.

¶ 17. Defendant argues that the VOP court erred by failing to consider all evidence related to the charged violations. Specifically, that "[t]o find a violation for failure to complete treatment, the trial court was required to find that [defendant's] participation in the program was unsatisfactory." In support, defendant cites this Court's 2018 decisions in State v. Stuart, 2018 VT 81, 208 Vt. 127, 196 A.3d 306, and State v. Austin, 165 Vt. 389, 685 A.2d 1076 (1996), which we address in turn.

¶ 18. In Stuart, we wrote that, "[w]hen determining the merits of a probation violation based on a probationer's expulsion from a court-ordered treatment program, the ultimate question for the court is whether the probationer participated satisfactorily in the program." 2018 VT 81, ¶ 20 (quotation omitted). Defendant argues that the evidence showed that, before he left, he was succeeding in the program, had clean urinalyses, had been promoted to a leadership position within his unit, and had already completed the Pathways program. He claims that the VOP court failed to consider that he left in protest over treatment to which he objected.

¶ 19. Even if, as defendant argues on appeal, "the fact of termination is not sufficient to prove a probation violation for failing to complete court-ordered treatment," it is undisputed that

7

defendant left the treatment program voluntarily before he completed it. Defendant testified at the February 2004 merits hearing, when asked whether he needed any further substance-abuse treatment, that "I'm going to have to say, no, I don't need any more treatment," and that, while "I needed to be at Phoenix House in Springfield, Mass. in 1999 when I was released from prison, I didn't need it in 2002." But he enrolled in the program because, he explained, "I'd already completed basically the same program at Pathways." Defendant further testified that he told Phoenix House staff, on the day he left the program in January 2003, that he was "just going to make this real easy on you. I don't have anything to say. Just let me get my money, I'll sign the papers and leave" because he "was really tired of being there." Defendant testified further that he "left" because he "really thought I was getting . . . kicked out anyways. I figured it would be better to just leave and go to probation than get kicked out." Thus, defendant acknowledged that he "left" the program, not because he was terminated, but to avoid being terminated.

¶ 20.    As a result, the VOP court found that defendant did not successfully complete the program and he did not have the permission of either his Massachusetts or Vermont PO to leave. The VOP court found that defendant "left the house without being asked to do so." Because this finding was "fairly and reasonably supported by credible evidence," it may not be disturbed on review. State v. Stern, 2018 VT 36, ¶ 5, 207 Vt. 479, 186 A.3d 1099 (quotation omitted).

¶ 21.    Defendant also cites our 1996 decision in State v. Austin in support of his argument that "[t]his Court has required the trial court to evaluate all the circumstances—positive and negative—of program participation prior to finding a violation for failure to successfully complete treatment."

¶ 22.    In Austin, we reversed the trial court's finding that the defendant had violated a condition requiring him to successfully complete sex-offender treatment because the defendant had not actually ceased his therapy and the court did not find that further therapy would serve no useful purpose. 165 Vt. at 390, 685 A.2d at 1077. In Austin, we described a prior decision holding

8

that "a refusal to cooperate with the psychologist was a failure to complete therapy." Id. at 399, 685 A.2d at 1083 (quoting State v. Foster, 151 Vt. 442, 447, 561 A.2d 107, 110 (1989) (alteration omitted)). The Court continued: "[i]n Foster, however, the trial court supported its conclusion with findings that the defendant had missed two of three scheduled counseling appointments, and had refused to discuss his offense at the third appointment," and, additionally, that "the defendant's psychologist indicated that no further appointments or meetings were necessary or appropriate because of the defendant's refusal to cooperate in discussing his offense." Id. In Austin, "by contrast, [the] defendant's therapist expressed satisfaction with [the] defendant's attendance, participation, and level of intellectual understanding in his treatment, and recommended that [the] defendant continue in the treatment program." Id. at 399-400, 685 A.2d at 1083. The defendant in Austin "had not actually ceased his therapy" and "neither the evidence nor the findings support[ed] the conclusion that [the] defendant had willfully obstructed his therapy, such that continued therapy was futile; indeed, the unrefuted testimony supported the view that [the] defendant needed to remain in therapy." Id. at 399, 400, 685 A.2d at 1083, 1084.

¶ 23. That defendant here was, according to the Phoenix House director, "doing fine" before leaving the program, does not align this case with Austin, as defendant argues. We wrote in Austin that "[t]he trial court made no finding that [the] defendant's difficulty in translating the intellectual principles of therapy into everyday practice amounted to willful noncooperation on the part of [the] defendant," and that, "[a]bsent such a finding, the conclusion that [the] defendant had violated [the relevant probation condition] was premature." Id. at 400, 685 A.2d at 1083.

¶ 24. Here, in finding that defendant "did not successfully complete the program," and lacked permission from his POs to leave, the VOP court did exactly what defendant argues it should have done by looking beyond the mere fact that he did not complete the program to the reasons for the incompletion.

9

¶ 25. This Court has "repeatedly found that a probationer's failure to participate in an assigned program constitutes noncompliant action by the probationer." State v. J.S., 2018 VT 49, ¶ 15, 207 Vt. 379, 189 A.3d 552. "For example, in State v. Provost, the intake counselor for the probationer's court-ordered therapy program told the defendant that he could not complete the intake because he claimed he did not commit the offenses underlying the conviction." Id. In Provost, "[w]e held that the 'defendant's own actions . . . prevented him from completing the intake that day.' " Id. (quoting State v. Provost, 2014 VT 86A, ¶ 16, 199 Vt. 568, 133 A.3d 826). Similarly, in State v. Gleason, we held that the probationer violated his counseling requirement when his psychologist discontinued his counseling after he repeatedly refused to discuss issues related to his sexual-offense convictions. 154 Vt. 205, 216-17, 576 A.2d 1246, 1253 (1990). In the instant case, defendant "willfully obstructed his therapy" when he voluntarily left his court-ordered treatment program before successfully completing the program and without permission from his PO. Austin, 165 Vt. at 400, 685 A.2d at 1084. Thus, defendant willfully obstructed his therapy, thereby failing to attend, participate in, and complete the program, as required by his probation conditions.

¶ 26. Defendant argues that the VOP court erred in failing to consider the treatment he was subjected to at Phoenix House, which included hard labor and severe food restrictions. In fact, the VOP court reviewed the tight-house restrictions, noting that residents' "breaks and their meals were restricted, and their diet curtailed. At the same time, [defendant] was experiencing a respiratory condition," producing blood and bile when coughing. The VOP court detailed defendant's treatment and described the tight-house restrictions on the variety and amount of food residents could consume. The VOP court then noted that Phoenix House "serves approximately 100 people per year but only 10-20% graduate" because "[i]t is a tough program, and a hard place in which to succeed." As the VOP court noted, however, the proper avenue for registering defendant's dissatisfaction with the Phoenix House program was to file a grievance with the

Department of Corrections (DOC), a process with which he was familiar, having filed, by defendant's own count, twenty-four grievances with the DOC between February 2001 and December 2003. Alternatively, he could have asked the court to modify his probation conditions. See 28 V.S.A. § 253(a) ("During the period of probation, the court, on application of a probation officer or of the offender, or on its own motion, may modify the requirements imposed upon the offender."). Having failed to follow either path, he cannot now claim that he was excused from compliance.

¶ 27. Defendant also argues that "there was no evidence that anyone from the DOC had looked at [Phoenix House] before sending [defendant] there," presumably referring to 28 V.S.A. § 254(a)'s requirement that "the Commissioner [of Corrections] certifies that adequate treatment facilities, personnel, and programs are available." Defendant claims that if the DOC had investigated the program, it would have declined to certify the program for him. However, defendant applied to Phoenix House himself. That he failed to familiarize himself with the program requirements before applying is not the fault of the DOC. Further, there is no evidence in the record to support his assertion that the DOC did not investigate the program.

¶ 28. The VOP court's conclusion that defendant also violated Conditions 15 and 16 was therefore "reasonably supported by the findings." Stern, 2018 VT 36, ¶ 5.

¶ 29. Defendant also argues that the VOP court impermissibly delegated its authority to defendant's PO. Specifically, he argues that his Vermont PO "overstepped because he did not have the authority to send [defendant] to a punitive program he did not know the first thing about." This argument fails because it constitutes an impermissible collateral attack. "We have previously held that a probationer is barred from raising a collateral challenge to a probation condition that he or she was charged with violating, where the challenge could have been raised on direct appeal from the sentencing order." State v. Kane, 2017 VT 36, ¶ 16, 204 Vt. 462, 169 A.3d 762 (quotation omitted). As in Kane, "there was a contested sentencing hearing before the trial court," and, "[a]t

11

this hearing, the court had the opportunity to take evidence and to make factual findings to support the conditions of probation, including" the contested conditions. Id. ¶ 17. Here, defendant's argument that the VOP court impermissibly delegated its authority to defendant's PO "is a facial challenge to the imposition of [Conditions 15 and 16], and thus is barred as a collateral attack on the condition." Id. ¶ 18.

## II. Probation Revocation

¶ 30. Defendant next argues that the VOP court's decision to revoke probation and impose the underlying sentence must be reversed because it made factual mistakes about, and ultimately relied on, defendant's pre-murder criminal history. Defendant argues further that it was plainly erroneous for the VOP court to rely on this factually inaccurate history because, when the court considered defendant's pre-murder criminal history, it contravened the probation-revocation statute's plain language, which only permits VOP courts to consider the original offense—in this case, the murder—and conduct following the original offense. Because the VOP court's consideration of defendant's prior criminal history was plainly erroneous, we reverse the court's revocation of probation.

¶ 31. Because defendant did not raise these objections at the time of the probation-revocation hearing, we review for plain error, see State v. Decoteau, 2007 VT 94, ¶ 11, 182 Vt. 433, 940 A.2d 661 (applying plain-error analysis to probation-revocation proceeding where argument not preserved below), which is "a very high bar," State v. Ray, 2019 VT 51, ¶ 6, 210 Vt. 496, 216 A.3d 1274 (quotation omitted). Plain error "exists only in extraordinary situations where the error is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." State v. Lucas, 2015 VT 92, ¶ 9, 200 Vt. 239, 129 A.3d 646 (quotation and alterations omitted). Specifically, "[p]lain error requires a showing that (1) there was error, (2) the error is obvious, (3) the error affects the substantial rights of and results in prejudice to the

defendant, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Ray, 2019 VT 51, ¶ 6 (quotation omitted).

¶ 32. Revocation of probation is governed by 28 V.S.A. §§ 303 and 304. If a violation is established, the court may revoke probation and order the defendant to serve the suspended sentence, or it may, in its discretion, impose one or more of the statutorily authorized alternative dispositions as set forth in 28 V.S.A. § 304. Section 303(a) states that "[p]robation shall not be revoked unless the probationer violates a condition of his or her probation or is convicted of another crime. The violation or conviction shall be both a necessary and a sufficient ground for the revocation of probation." Section 303(b) prohibits the court from revoking probation and ordering confinement unless it finds "on the basis of the original offense and the intervening conduct of the probationer that" one of three enumerated conditions obtain; namely, that "(1) confinement is necessary to protect the community from further criminal activity by the probationer"; "(2) the probationer is in need of correctional treatment which can most effectively be provided if he or she is confined"; or "(3) it would unduly depreciate the seriousness of the violation if probation were not revoked." (Emphasis added.)

¶ 33. Here, in imposing sentence at the VOP hearing, the VOP court detailed defendant's criminal and substance-use history at length, including a prior criminal sentence for which defendant received parole in Massachusetts in the mid-1980s. During its disquisition on defendant's pre-murder life history, the VOP court also suggested that more zealous prosecution could have led to a conviction for first-degree murder and ascribed to defendant an affinity for "loaded firearms." The court stated,

> [y]ou think confinement is necessary to protect the community? Not just the community of White River or Vermont or Massachusetts, the community of the world, [defendant]. Because booze and drugs is [sic] everywhere on the face of this planet. And as long as you can get your hands on them, you are a clear and present danger. And I'm so sorry to have to say that. Because, you see, there will always

be weapons, too. We're good at that.

The court went on:

> [i]s your confinement necessary for treatment? Sure. We can try one more time . . . . But let me tell you something else I've observed, [defendant]. You haven't hit bottom yet. And I don't know what your bottom is. But until you get around to stand up and face the rest of your life sober, I can't take that risk for society. Three good judges have taken it before. A good judge obviously took it in Massachusetts. A good Department of Corrections in Massachusetts took that risk after fifteen months of a ten-year sentence. How many times are we going to find you with your hand in the cookie jar?

¶ 34. By relying on defendant's conduct prior to the original offense, including a pre-offense criminal sentence and parole, in reaching its decision, the VOP court violated 28 V.S.A. § 303(b), which limits the VOP court's review to "the original offense and the intervening conduct of the probationer." Section 303(b) does not permit consideration of a probationer's prior criminal sentence, or any other bad acts, that preceded "the original offense." The VOP court, however, considered defendant's prior criminal sentence, and much else besides, in revoking defendant's probation.

¶ 35. Leading up to its revocation of defendant's probation, the court stated the following on the record: "[l]et me talk a little bit, [defendant], about what I have seen of your life pattern as it relates to this charge, to this violation of probation that I've found and where we go from here." The VOP court then described defendant's life history, beginning when defendant was eleven years old, twenty-nine years prior to the hearing and twelve years before the 1987 murder. This history was, according to the VOP court, part of defendant's "life pattern," which the court then "relate[d] to this charge" and "to this violation of probation." In addition, the VOP court's view of the case overlooked factors in defendant's favor, including his years of sobriety, that the infraction was unrelated to the principal rehabilitative concern of alcohol, and that although he walked away from Phoenix House, he voluntarily turned himself in two days later. All of this was

14

relevant to disposition and was not considered by the trial court and should be considered on remand as relevant to the statutory factors. The court's consideration of defendant's pre-offense conduct and conviction violated 28 V.S.A. § 303(b), and was obviously erroneous, satisfying the first two plain-error elements. 2019 VT 51, ¶ 6.

¶ 36. The VOP court's error also affected defendant's substantial rights, prejudiced defendant, and seriously affects the integrity of the judicial process, satisfying the third and fourth plain-error elements. Id. While we do not define substantial rights today, we note that these rights include "fundamental value[s]," such as "the right to liberty." State v. Downing, 2020 VT 97, ¶ 20, 213 Vt. 643, 245 A.3d 758 (quotation omitted). Probation revocation plainly implicates defendant's right to liberty, and therefore is a substantial right under the third plain-error element. 2019 VT 51, ¶ 6.

¶ 37. Prejudice, required by the third plain-error element, is "[d]amage or detriment to one's legal rights or claims," prejudice, Black's Law Dictionary (11th ed. 2019), and can be directed toward either a defendant or a defendant's defense. See People v. Williams, 716 N.W.2d 208, 219 (Mich. 2006) ("There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to his defense." (quotation omitted)). As the Michigan Supreme Court notes, "[p]rejudice to the defense is the more serious concern, because the inability of a defendant to adequately prepare his case skews the fairness of the entire system." Id. (quotation omitted). Here, the VOP court's consideration of defendant's prior conduct damaged his legal claims affecting his substantial rights, as discussed above. Lastly, an error such as this seriously affects the integrity of the judicial system, as the Michigan high court notes. Indeed, considering conduct outside of that which is allowed under the relevant statute "skews the fairness of the entire system." Id. The VOP court's consideration of defendant's prior conduct therefore satisfies the last plain-error element. 2019 VT 51, ¶ 6.

¶ 38.    When the VOP court revoked defendant's probation after failing to consider all of the evidence but following consideration of prior conduct, in contravention of § 303(b), it clearly prejudiced defendant's defense and adversely affected the integrity of the judicial process.  If we are to preserve public confidence in our system of justice, it is of paramount importance that courts hew closely to the statutory language to ensure that, as the Vermont Constitution requires, "justice shall be . . . impartially administered, without corruption, or unnecessary delay."  Vt. Const. ch. II, § 28.  Because the VOP court contravened § 303(b)'s plain language and, in doing so, prejudiced defendant and adversely affected the integrity of the entire justice system, we conclude that defendant is entitled to a new probation-revocation-disposition hearing.

Defendant's probation violations are affirmed.  The revocation of probation is reversed, and the case is remanded to the criminal division to conduct a new probation-revocation-disposition hearing forthwith.

FOR THE COURT:

_____
Chief Justice

16